HELEN S. NICHOLS *vs*. COMMERCIAL TRAVELLERS' EASTERN
ACCIDENT ASSOCIATION.

Suffolk.    May 20, 1915. — July 9, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Insurance,* Accident.    *Evidence,* Presumptions and burden of proof, Report of
inquest, Of nature of death, Admissible for limited purpose.

At the trial of an action upon a policy of accident insurance providing for the
payment to the plaintiff of a certain sum in the event of the death of the insured
"wholly and entirely by external, violent, and accidental means," there was
evidence tending to show the following facts: The insured was a man about
five feet seven inches in height, of large build, weighing about two hundred
pounds, and of a contented and normal mind. Sometimes he had slight attacks
of indigestion, when he always felt as if he wanted to get to an open window.
When he got up to go to a window at night he might stay there five minutes.
On the night of his death he had occupied a lower berth in a sleeping car, the
berth being made up with the head toward the front of the train. The window
at the foot of the bed had been raised and a screen inserted twenty-five inches
wide and eighteen inches high, with its lower edge about nine inches above the
bed. The upper berth was about thirty-six and a half inches above the bed. The
insured was seen in the corridor of the car at two o'clock in the morning. At
three o'clock his body was found between tracks in a railroad yard, clad in a
portion of a nightshirt and with the skull and cheek bone fractured. His watch,
money and ticket were found under the pillow in the berth, his clothing was
laid on the shelf and some of his belongings were found in the small hammock
in the berth, the end of the hammock nearer the foot of the berth being pulled
down and hanging. The screen was found broken and torn from the top and
sides of the frame and hanging outside of the car. There were finger marks on
the car outside and below the window. *Held,* that a finding was warranted that
the insured met his death by external, violent and accidental means.

Where at the trial of an action upon a policy of accident insurance providing for
the payment of a certain sum in the event of the death of the insured "wholly
and entirely by external, violent, and accidental means," a case of death by
violent and external means is made out by the evidence, there is a presumption
of fact that the death was not intentional and that the injuries causing it were
not self-inflicted; and therefore, although without such presumption the evi-
dence might not be sufficient to warrant a finding that the cause of the death
was wholly accidental, it cannot be ruled as a matter of law under such cir-
cumstances that the question, whether such cause was wholly accidental,
should not be left to the jury.

If, at the trial of an action upon a policy of accident insurance which contained a
provision that no indemnity should be paid if the death of the insured resulted
from an injury "caused wholly or in part . . . by . . . voluntary exposure to
unnecessary danger . . . nor for any injury which the" insured "by the exercise

of ordinary care, prudence, and foresight, might have averted or prevented, or to which" his "own negligence shall have contributed," the defendant offers evidence tending to exonerate it from liability under that provision, but on all the evidence inferences different from those urged by the defendant reasonably might be drawn, the burden of sustaining the defence urged is on the defendant, and a verdict in its favor cannot be ordered.

If a policy of accident insurance, which originally provided a death indemnity of not more than $5,000, was afterwards amended to provide that, in case of the death of the insured "while riding as a passenger on a passenger train, and inside a passenger car thereof," the amount to be paid should "not exceed $10,000," and the insured thereafter met his death by falling through a window of a sleeping car on a passenger train, the beneficiary under the policy, if entitled to recover at all, may recover $10,000.

Where, in an action against an insurance company for a death indemnity agreed to be paid in a policy of accident insurance which required, as a condition precedent to the payment of the indemnity, that direct and affirmative proof of the death should be furnished to the directors, the defendant, in answer to interrogatories filed by the plaintiff had stated that it received from the plaintiff's attorney a letter, which it annexed, containing a statement of the claim of the indemnity, and that enclosed in the letter was a copy of the report of an inquest into the cause of the death which included a finding that there was no suicidal intent on the part of the insured and which also was annexed to the answers without objection, if the presiding judge subject to the exceptions of the defendant permits the report of the inquest to be read to the jury and instructs them that they should not take the report as evidence of the manner of death or its cause, but should use it solely for the purpose of deciding whether the report, with the other information obtained by the defendant, ought to have satisfied it that the cause of death was an accident within the provisions of the policy, the defendant's exceptions must be overruled, the report having been admissible for the limited purpose for which it was admitted.

CARROLL, J.   The plaintiff is the widow of Curtis Nichols and the beneficiary named in a certificate of insurance issued by the defendant, providing for the payment to her of a certain sum in the event of the death of her husband "wholly and entirely by external, violent, and accidental means." He was found dead in the early morning of July 25, 1912, in the railroad yard in West Springfield. At the close of the evidence the defendant requested the judge * to instruct the jury that upon all the evidence as matter of law the jury should return a verdict in favor of the defendant. This the judge declined to do and the defendant excepted. The defendant also requested the judge to give certain other instructions which were refused and the defendant excepted. There was a verdict of $11,164.94 for the plaintiff. The fundamental question is: Was there sufficient evidence that the insured died

---

* *Lawton,* J.

from external, violent and accidental means to warrant the submission of the case to the jury?

1. Curtis Nichols was a passenger on a train of the Boston and Albany Railroad Company leaving Boston on the night of July 24, 1912, at 11.15 P. M., for Albany, New York. He occupied the lower berth number five in the sleeping car Kitchawan. There was testimony tending to show that as soon as the train left the South Station in Boston he went "into the smoking room, took off his coat, vest and collar and proceeded to wash;" after he finished he sat opposite a fellow passenger and talked with him on various matters for "about a half or three-quarters of an hour;" he complained of the heat; in a general way he discussed business, and seemed "very normal, very jolly and very hopeful on the outlook." He finally said, he thought "he would be cooler in the sleeper," and that he would go to bed. At about two o'clock the next morning he was seen by the Pullman conductor "coming from the gent's toilet at the end . . . towards the rear of the train." An hour later, about three o'clock on that morning, his dead body was found about twenty or twenty-five feet west of the dry bridge over Main Street in West Springfield, lying with the head toward the east, between the two main tracks. A part of his nightshirt was "on the right side of the body under the arms and the body." His skull and cheek bone were fractured. The bed in lower berth five was made up in the usual way, with the head toward the engine; a window at the rear or foot of the berth was open and in its place there was a wire screen enclosed by a frame. The space inside the frame of this screen was between twenty-four and twenty-five inches wide and eighteen inches in height. When the train reached Pittsfield, about 4.10 in the morning, it was found that the bed had been occupied and the bed clothes pushed down from the head. His watch, money and ticket were found under the pillow. His clothing was laid on the shelf. Some of his belongings were found in the small hammock on the inside of the berth, and the east end of this hammock, or the end toward the rear of the train and in front of the open window, was pulled down and hanging loose. The wire screen was found to be broken and torn from the top and sides of the frame, hanging on the outside of the car. Marks, resembling finger marks, were found on the outside of the car below the window. The window sill was about eight

inches higher than the bed, the lower edge of the wire screen about one inch higher than the window sill, and the upper berth was about thirty-six and one half inches above the bed as made up in the lower berth.

There was evidence that before reaching Springfield the train was "jerky" in stopping and starting, but all the testimony tended to show that at the place where Nichols was found, which was about half a mile west of Springfield, the train was running smoothly, with no unusual jerk or jolt, at the rate of about twenty-five to thirty-five miles an hour, on a level grade where there was a slight curve. While it was warm during the day it grew cooler toward night, and weather observations taken at Boston showed that at two o'clock on the morning of July 25 the weather was clear and the temperature 61°, and at three o'clock it was 60°. Mrs. Nichols testified that her husband suffered "from the heat or shortness of breath, and that when it was excessively hot . . . he could not stay in a closed room; . . . sometimes he had slight attacks of indigestion, and then he always felt as if he wanted to get to the open window; . . . that when her husband would get up and go to the window at nights he might stay there probably five minutes;" that he "was a wonderfully happy person; never had fits of melancholy or moroseness, or anything of that sort;" and several letters from the assured to his wife and children were in evidence, indicating a normal and contented mind.* Nichols left word to be called at half past five o'clock in the morning, the train being due to arrive at Albany at 6.15 A. M.

On such evidence, especially from the place where the body was found, from the marks upon it and the fractured skull and cheek bone, the jury would be fully justified in finding that Nichols met his death because of external and violent means; and further, that in some unexplained way he fell against, or threw himself against, the screen in such a way that it became broken and he fell from the berth to the ground. When a man is found dead under such circumstances, when the marks on the body show the cause

* In cross-examination the plaintiff testified "that her husband was approximately five feet, seven inches tall, and weighed probably two hundred pounds; in build he was very large; his feet were small, but his legs were very large, and his arms were large; his body also was large."

of death and all the circumstances exclude the theory of disease or injuries intentionally inflicted by a third person, it may be inferred that the death was accidental and was not the result of intention or design. When a case of death by violent and external means is made out, the presumption of fact is that because of the external and violent nature of the injuries the death was not intentional and the injuries not self-inflicted. The way in which the assured fell through the screen may be uncertain and conjectural. He may have been leaning against it for fresh air; — being a heavy man weighing two hundred pounds — he may have been trying to remove the screen, to close the window; intentionally or negligently, he may have pushed out the wire and thrown himself from the train; but the plaintiff is entitled to the presumption that her husband did not kill himself, that is to say, the jury might draw such an inference; and having that presumption of fact in her favor, no matter how strongly we may agree with the defendant on the question of fact, we cannot say as matter of law that the question of accident was not properly submitted to the jury. The presumption which the jury could make against intentional self-destruction sustains the burden resting on the plaintiff and makes her case a proper one for the consideration of the jury. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32. *Coburn* v. *Travelers' Ins. Co.* 145 Mass. 226. *Travelers' Ins. Co.* v. *McConkey,* 127 U. S. 661. *Supreme Tent Knights of Maccabees of the World* v. *King,* 73 C. C. A. 668. *Zearfoss* v. *Switchmen's Union of North America,* 102 Minn. 56. *Wilkinson* v. *Ætna Life Ins. Co.* 240 Ill. 205.

In *Standard Life & Accident Ins. Co.* v. *Thornton,* 40 C. C. A. 564, the facts were in many respects similar to the facts in the case at bar. In that case the insured was a passenger on a night train leaving Memphis, Tennessee, at 9 p. m., for Jasper, Alabama, where he expected to arrive at four o'clock the next morning. He was seen sitting in his berth in the sleeping car at twelve o'clock. This was the last seen of him alive. At 3.25 a. m. the porter went to call him and found the berth empty. Later the dead body of the insured was found beside the railroad track, three and one half miles from Jasper. From what part of the train he fell, or how he fell, or what he was doing when he fell, was entirely in doubt and was a matter of conjecture. In an action to recover on an accident

policy covering death from external, violent and accidental means, the plaintiff had a verdict, and Day, J., speaking for the court, said (p. 567): "There is nothing in the testimony to warrant the court . . . in interfering with the conclusion reached by the jury. They may well have reached the determination that the testimony did not warrant the inference of suicide, and, though unable to find exactly the manner in which decedent was taken off, the facts could have been reconciled with the theory of accident more readily than that of suicide, giving the plaintiff the benefit of the presumption against self-destruction."

Where, under a policy like the one before us, all the facts showing death by external and violent means are in evidence and the only reasonable inference to be drawn from them is the inference of death by design, volition or intention, then as matter of law there is no question of accident for the jury to consider. But where all the facts are not disclosed, or where they are in dispute, so that opinions properly may differ as to the conclusions to be drawn from them, then it is the province of the jury to pass on them and to decide whether the death is the result of accident or design.

In the case last cited it does not appear from what part of the train the deceased fell, and in the case at bar it does appear that the insured fell through the screen in the window of his berth. In our opinion this circumstance is not enough to distinguish the two cases.

In the present case there are not sufficient facts before us to assure us in deciding that the only reasonably just conclusion from them is that of suicide or death under some of the prohibited risks of the policy. In the ordinary negligence case, like those cited on the defendant's brief, where the burden of proof is on the plaintiff and the matter is conjectural, with no decisive evidence showing the plaintiff's care or the defendant's negligence, there is as matter of law no question for the jury, because the burden resting upon the plaintiff has not been sustained. Here there is a presumption, in the plaintiff's favor, of death by accident, although it is merely a presumption of fact and not of law; and while the burden is upon her to establish the external, violent and accidental cause of her husband's death, this inference in her behalf makes her case a proper one, so far as the law is concerned, for the jury to pass on.

We therefore think that there was no error in leaving the question to the jury.

2. The policy stipulated that no indemnity was to be paid if death resulted from an injury "caused wholly or in part . . . by . . . voluntary exposure to unnecessary danger, . . . nor for any injury which the member, by the exercise of ordinary care, prudence, and foresight, might have averted or prevented, or to which the member's own negligence shall have contributed."

If these conditions of the policy are broken there can be no recovery thereunder; if the deceased met his death by reason of his own want of care or his voluntary exposure to unnecessary danger his widow is not entitled to a verdict against the defendant. These provisions of the policy are exceptions preventing a recovery if they are violated, but because they are exceptions barring the member from recovering judgment, and causing a forfeiture of the policy, they are matters of affirmative defence and must be alleged and proved by the defendant.

Under similar language, in a policy of insurance, it is settled that the burden of showing that the death or injury was within the excepted or prohibited risks of the policy is upon the defendant. *Garcelon*. v. *Commercial Travellers' Eastern Accident Association*, 195 Mass. 531. *Anthony* v. *Mercantile Mutual Accident Association*, 162 Mass. 354. *Keene* v. *New England Mutual Accident Association*, 161 Mass. 149. *Badenfeld* v. *Massachusetts Mutual Accident Association*, 154 Mass. 77. *Coburn* v. *Travelers' Ins. Co.* 145 Mass. 226. *Freeman* v. *Travelers' Ins. Co.* 144 Mass. 572.

Where the burden of showing that the insured came within either of these exceptions is upon the defendant, as in the case at bar, and where different inferences might be drawn from the evidence, a question of fact for the jury to pass upon is presented, and the presiding judge could not rule as matter of law that the defendant was entitled to a verdict because the member was guilty of negligence and exposure to danger. *Worcester Color Co.* v. *Henry Wood's Sons Co.* 209 Mass. 105, 110. *Anthony* v. *Mercantile Mutual Accident Association*, and *Garcelon* v. *Commercial Travellers' Eastern Accident Association*, *supra*.

3. As originally written the limit of recovery under the policy was $5,000, but in 1911 the policy was amended by providing, in case of death "while riding as a passenger on a passenger train,

and inside a passenger car thereof, which train or car was propelled by steam power," that the amount to be paid "shall not exceed $10,000." If the plaintiff is entitled to recover anything, she is entitled to recover $10,000. Her husband was a passenger on a passenger train, in a passenger car, and the train was propelled by steam power. *McKimble* v. *Boston & Maine Railroad,* 139 Mass. 542. *Preferred Accident Ins. Co. of New York* v. *Muir,* 61 C. C. A. 456. *King* v. *Travelers' Ins. Co.* 101 Ga. 64.

4. Following the death of the insured an inquest was held, and in answer to interrogatories of the plaintiff the defendant annexed the report of the inquest showing that there was no suicidal intent on the part of the deceased, together with a copy of a letter from the plaintiff's attorney to the defendant enclosing it with a claim of indemnity under the policy. The judge permitted this report of the inquest to be read to the jury, instructing them that they were not to take the report as evidence of the manner of death or of its cause, but to use it solely for the purpose of deciding whether the report, with the other information obtained by the directors, ought to have satisfied them that the cause of death was an accident within the terms of the policy. Of course the report of an inquest is not admissible as substantive evidence. *Jewett* v. *Boston Elevated Railway,* 219 Mass. 528. This report was received and kept by the defendant, and we think it was admissible in evidence for the limited purpose for which it was offered and for which the jury were to examine it. The policy expressly required that satisfactory proof of the external, violent and accidental means of death should be furnished to the directors; and therefore the report of the inquest was admissible as bearing on this question. *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292.

The evidence as to the "proof" submitted by the plaintiff to the defendant might have been found to be such as ought to have been "satisfactory to the board of directors" acting as reasonable men. Upon this point the case is indistinguishable from *Traiser* v. *Commercial Travellers' Eastern Accident Association.*

We have examined all the other requests for instructions* made

---

* The following rulings were asked for by the defendant and were refused, subject to its exceptions.

"8. There being no evidence of any accident or of any unusual condition

by the defendant and see no error in the refusal of the judge to give them.

*Exceptions overruled.*

The case was submitted on briefs.

*W. B. Grant & N. L. Sheldon,* for the defendant.

*S. L. Whipple, A. R. Shrigley & S. T. Crawford,* for the plaintiff.

or occurrence within the car at the time assured went through the window, the jury shall return a verdict for the defendant.

"9. The size of the window screen, through which the assured went, being so small that he could get through only by going at full length, and the space in the berth so small and confined and so situated in reference to said screen that the assured could not fall against the said screen so as to pass through the same without his own violition, sane or insane, the jury is directed to return a verdict for the defendant.

"10. If the jury find that the size of the window screen, through which the assured went, was so small that he could not get through except by going at full length and that the space in the berth was so small and confined and so situated in reference to said screen that the assured could not fall against the said screen so as to pass through the same without his own volition, sane or insane, the jury should return a verdict for the defendant."

"13. Upon all the evidence, the jury can in no event assess damages for a greater amount than $5,000."