[Civ. No. 1044.   Fourth Appellate District.—August 8, 1933.]

LILLIE W. BYERS, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant.

Wright & McKee and C. M. Monroe for Appellant.

Hamilton, Lindley & Higgins and Glen H. Munkelt for Respondent.

F. Eldred Boland, as *Amicus Curiae* on Behalf of Respondent.

MARKS, J.—This is an appeal from a judgment rendered in favor of respondent permitting her to recover upon three policies of accident insurance upon the life of her husband, James C. Byers, a former sheriff of San Diego County. The first policy was issued August 9, 1921; the second was in the form of a rider to a noncancelable income policy, which rider was dated May 3, 1927; the third was issued August 9, 1928.

The first policy contained a clause whereby it insured "against loss of· life resulting directly and independently of all other causes, from bodily injury effected during the term of this policy solely through accidental means. . . . This insurance does not cover, . . . suicide, sane or insane, or any attempt thereat, sane or insane." The other two policies contained provisions similar in effect. The applications for the two later policies each contained the following provision which was made a part of the policy: "The falsity of any statement in the application, materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall bar all right to recovery under this policy." Respondent was named as beneficiary in all of the policies.

James C. Byers came to his death on the twenty-ninth day of April, 1929. Ten days prior to that date he had undergone an operation for appendicitis in a hospital in the city of San Diego. During practically all of his stay in the hospital Antonia Hahn acted as his night nurse. On April 28th she came on duty at about 7 o'clock in the evening. Mr. Byers told her he was going home on the following day. She testified that he appeared more cheerful than at any other time during her attendance upon him. During the night she administered to his needs and at about 5 o'clock in the morning observed he was awake. She took his temperature and pulse, both of which were normal, and he remarked: "I didn't sleep much last night. You better give me a cup of hot malted milk, maybe I can sleep some more." Miss Hahn went to a utility room on the same floor of the hospital where she prepared the hot malted milk,

returning in about five or six minutes. She found her patient's bed empty. A search revealed his body lying on the pavement forty-five feet below the window of his room.

Mr. Byers' room was on the fourth floor of the hospital with its longest dimension running north and south. The door opened through the north wall. The patient's bed projected west from about the center of the east wall. A closet door opened in this wall north of the bed. A dresser which stood against the wall in the southwest corner of the room extended about six inches over a window in the south wall. This window was forty-six inches wide with its sill thirty-one inches from the floor, the lower sash when completely raised made an opening twenty-eight inches high. The sill was three inches wide with the frame sloping downward to the outside, leaving a space seven inches wide in which were fitted a sash and a wire screen. Outside of the frame there was a sloping stone projection six inches wide. There was a radiator inside of the window with its outside edge nine and one-fourth inches from the wall. The screen was fitted on the outside of the window, hinged at the top and held in place by two hooks at the bottom. When Miss Hahn left the room there was a half gallon bottle of Vichy water, two other bottles and a glass of orange juice on the window sill leaning outward against the screen. The lower sash was raised to within three or four inches of the top. Mr. Byers was lying quietly on his back in bed. The door to the closet was closed. When Miss Hahn returned to the room the covers of the bed had been turned back to the south, which would be the patient's left-hand side of the bed. The closet door was open and a bathrobe removed therefrom. The bottles and glass of orange juice were standing in a row near the front edge of the dresser with a napkin covering the orange juice. The lower sash of the window had been fully raised and the screen unhooked at the bottom. Mr. Byers' body was found lying on the pavement clothed in his bathrobe, the belt of which was fastened. He had not left his bed from the time of the operation until the morning of April 29th after Miss Hahn had left the room at his request. There was no eye-witness to the tragedy. It is admitted that his death was caused by the fall. There is no conflict in the evidence.

Appellant urges numerous grounds for reversal which may be summarized as follows: First, that the death of Mr. Byers was not caused by accidental means; second, that the evidence demonstrates that he committed suicide; third, that he had consulted two physicians within five years prior to the dates of the last two accident policies, but did not disclose this in his applications; and fourth, errors in instructions to the jury. We will consider these contentions in the order stated.

This court has just had occasion to carefully consider and construe the facts of a· case under the terms of a policy insuring against death by accidental means. (*Losleben* v. *California State Life Ins. Co., ante,* p. 550 [24 Pac. (2d) 825].) Under the authorities there cited we have reached the conclusion that the facts in the instant case were such as to enable the jury to draw the conclusion that Mr. Byers came to his death "solely through accidental means".

Appellant frankly admits that "it is true that there is a presumption against suicide based upon the natural love of life. Where, therefore, it is shown that insured came to his death by external and violent means and the surrounding circumstances are equally compatible with accident or suicide, the courts will favor the presumption that death was effected through accidental means." In *Wilkinson* v. *Standard Acc. Ins. Co.,* 180 Cal. 252 [180 Pac. 607], it was held that where an insured is found dead under such circumstances that death may have been caused either by suicide or accident, the presumption is against suicide and in favor of accident which flows from the statutory presumption that "a person is innocent of crime or wrong". (Sec. 1963, subd. 1, Code Civ. Proc.)

In the instant case the jury might well have concluded, as indicated by its verdict, that as Mr. Byers knew he was going home on the day in question, he arose from his bed, donned his bathrobe, opened his window to its limit and unhooked the screen so that he could observe the character of the day and get a breath of really fresh air from outside the hospital, and that in leaning over the radiator and window-sill he lost his balance and accidentally fell to his death. The very fact that he removed the articles from the window-sill and placed them in an orderly position on the edge of the dresser, with the orange juice covered to

protect it from contamination from the air, might well indicate that he expected to use the contents of these containers. A man contemplating suicide would not necessarily think of or prevent the breaking of three glass bottles and a glass of orange juice, nor would he necessarily clothe himself in his bathrobe and fasten the belt. We have concluded that the evidence points with equal if not greater force toward accident than toward suicide.

██ In *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529], it was held that where a presumption arises in favor of a party which is not overcome by evidence produced and offered by that party, it remains as evidence before the jury until a verdict is reached. In the instant case the presumption against suicide and in favor of death caused solely by accidental means was not overcome by the evidence offered by appellant. It therefore remained with the jury as evidence, and the jury having returned a verdict in accordance with that presumption it supports such verdict and the judgment entered upon it. In *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 44, 26 A. L. R. 123], it was said: "This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence (*Anderson* v. *Los Angeles Transfer Co.*, 170 Cal. 66 [148 Pac. 212]). In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 Pac. 800]). 'In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff (the prevailing party) must be indulged by this court.' (*Bandle* v. *Commercial Bank of Los Angeles*, 178 Cal. 546, 547 [174 Pac. 44, 45].)'' (See, also, *Witherow* v. *United American Ins. Co.*, 101 Cal. App. 334 [281 Pac. 668].)

The three cases of *Nichols* v. *Commercial Travelers etc. Assn.*, 221 Mass. 540 [109 N. E. 449], *Bohaker* v. *Travelers Ins. Co.*, 215 Mass. 32 [102 N. E. 342, 46 L. R. A. (N. S.) 543], and *United States Fidelity & Guaranty Co.* v. *Blake*, 285 Fed. 449, all present facts somewhat similar to those of the instant case where the insured fell to his death through a window. In each of these cases involving the question of death by accidental means the court was of the opinion that a judgment in favor of the beneficiary and against the insurance carrier should be affirmed because of the presumption against suicide and in favor of death through accidental means where there was no evidence rebutting this presumption.

▉ Appellant called Dr. J. W. Sherrill as a witness in its behalf. He testified that Mr. Byers entered the Scripps Metabolic Clinic in La Jolla in November, 1926; that he remained one night; that he came in for "a general checking up", which he received; that "I told him I could not find a thing wrong with him at that time, and he went home promptly." This visit to the doctor and the hospital was *not disclosed in either application for insurance.* A similar question under another policy on the life of James C. Byers was considered by this court in *Travelers Ins. Co.* v. *Byers*, 123 Cal. App. 473 [11 Pac. (2d) 444, 447], where it was said: "In construing what 'consulting a physician' as used in the application meant, the court states on page 460 (*Poole* v. *Grand Circle, W. O. W.*, 18 Cal. App. 457 [123 Pac. 349, 350]): 'A reasonable construction of the question implies that it should be interpreted as relating to a consultation as to some disease or illness with which the applicant was or had been afflicted, not to some feeling of trivial discomfort or temporary indisposition not affecting the general health.' " Under the authority of this case we have concluded it was not necessary for Mr. Byers to disclose his visit to this physician and the night spent in the clinic where his sole purpose was to secure information as to his general health and nothing was found wrong with him.

▉ It appears in *Travelers Ins. Co.* v. *Byers, supra,* that James C. Byers visited a Dr. Worthington about sixteen times. The purpose of these visits does not there appear. In the instant case each policy contained a waiver of the privilege of a physician attending the insured. The trial

of this case was commenced on Friday, July 8th, and by consent of the parties was continued to and concluded on Monday, July 11, 1932. Appellant caused a subpoena to be issued for Dr. Worthington on July 9th. It was served on July 11th. It appears that he was too ill either to attend court or to have his deposition taken. No request was made for a postponement or continuance of the trial so that his testimony might have been made available to appellant. One of the grounds for motion for new trial was newly discovered evidence based upon the failure of appellant to have secured the testimony of Dr. Worthington. In an affidavit in support of this ground of the motion, it is said: ''That affiant believes and therefore alleges the fact to be that had said Worthington testified he would have shown the fact to be that said deceased, James C. Byers, consulted said physician during said months of November, 1926; January, February and May, 1927, and January, 1928; that during one of said months said Byers consulted said physician professionally at least sixteen times. Affiant further states that he bases said belief upon the fact that in a cause heretofore pending in this court between this plaintiff and the Travelers Insurance Company, a corporation, said Worthington testified in substance as hereinbefore set forth.''

We have concluded that the trial court did not err in denying the motion for new trial on the ground of newly discovered evidence. There is no sufficient showing of due diligence to secure the testimony of Dr. Worthington at the trial. Dr. Worthington had his residence and his office in San Diego.

We have carefully reviewed the instructions given by the trial court and are satisfied there is no prejudicial error in any of them.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 6, 1933.

Preston, J., dissented.