**EASTERN COMMERCIAL TRAVELERS ACCIDENT ASS'N v. SANDERS.**

No. 3509.

Circuit Court of Appeals, First Circuit.
Jan. 10, 1940.

Roscoe Walsworth, of Boston, Mass., for appellant.

Hubert C. Thompson, of Boston, Mass. (John C. Twomey, of Boston, Mass., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

Jessie M. Sanders, a citizen of Vermont, sued the defendant, a fraternal benefit association organized under Mass. G.L., c. 176, to recover accident benefits under two certificates of membership issued by the defendant to her husband. The husband met his death by drowning, accidentally, so the plaintiff claimed.

Certain evidence was admitted at the trial over defendant's objection. After the evidence was in, defendant moved for a directed verdict. The judge withheld decision on this motion under Rule 50(b), Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c. Both parties filed requests for instructions to the jury. However, no objections or exceptions were taken to the charge or to the granting or refusing of any of the instructions requested, and the record contains neither the charge nor the requests. The verdict, brought in on May 26, 1939, read: "The jury find for the plaintiff, and assess damages in the sum of $10,000 plus interest at 6 percent from April 27, 1937, in the sum of $1,250.00." On the same day, judgment was entered for the plaintiff, in accordance with the verdict. A few days later defendant moved that the verdict and judgment be set aside and that judgment be entered for the defendant in accordance with the previously mentioned motion for a directed verdict, or, in the alternative, that a new trial be ordered. The motion was denied, and defendant appeals.

The by-laws of the Association, which became part of the contract (Mass. G.L., c. 176, § 20), provide that no indemnity shall be paid for disability or death "unless established by direct and affirmative proofs satisfactory to the Board of Directors" that the death or disability was caused by accidental means; and that "the said Board shall within ninety days of the receipt of such proof" cause the stipulated benefits to be paid to the beneficiary. Plaintiff had the burden of establishing two propositions, (1) the happening of the event insured against, accidental death, and (2) that she had furnished to the defendant, as required by the contract, satisfactory proofs that the drowning was an

accident. Noyes v. Commercial Travellers' Eastern Accident Association, 1906, 190 Mass. 171, 180, 76 N.E. 665; Goldman v. Commercial Travellers Eastern Accident Association, 1938, Mass., 18 N.E.2d 373, 375, 376; Traiser v. Commercial Travellers' Eastern Accident Association, 1909, 202 Mass. 292, 293, 88 N.E. 901. It is settled by the Massachusetts decisions that "proof satisfactory to the board of directors". "does not mean that the judgment of the defendant's board necessarily was to be final on the matter, but only that the proofs must be such as ought to be satisfactory to reasonable men acting reasonably. Accordingly it ordinarily will be for the jury, looking at the proof actually furnished, to say whether it was such as reasonably should have satisfied the directors.". Traiser v. Commercial Travellers' Eastern Accident Association, supra, 202 Mass., at page 294, 88 N.E. at page 902; Nichols v. Commercial Travellers' Eastern Accident Association, 1915, 221 Mass. 540, 547, 109 N.E. 449.

On the first issue, as to whether the event insured against had occurred, the trial court, over objection, allowed the plaintiff to introduce certain evidence that had not been submitted to the board of directors. At the time, the trial judge expressly cautioned the jury that this evidence was not to be considered on the second issue, namely, whether satisfactory proofs had been submitted to the board of directors in accordance with the contract. The court committed no error in admitting this evidence. "There is no reason why a plaintiff, in the proof of the first of these two propositions, should be limited to details of fact or evidence contained in the statement of his claim made to the company under the requirements of the contract." Noyes v. Commercial Travellers' Eastern Accident Association, supra, 190 Mass. at page 181, 76 N.E. at page 666.

We think, further, that the trial judge was right in refusing to direct a verdict for the defendant.

It is abundantly clear from the evidence that the jury were warranted in finding that the drowning was accidental. "The presumption is that one does not commit suicide." Bohaker v. Travelers Insurance Co., 215 Mass. 32, 36, 102 N.E. 342, 344, 46 L.R.A.,N.S., 543. This presumption has a logical foundation derived from human experience. Silva v. Fidelity & Casualty Co. of New York, 1925, 252 Mass. 328, 330, 147 N.E. 858. A wealth of circumstance was shown as to decedent's happy family life, his good spirits, his plans for the future, his utter absence of motive for suicide. He was a traveling salesman. On July 22, 1936, he drove to the town of East Barnet, Vermont, on business. He signed up an order at a general merchandise store in that town; and after his business was over, he left his car in front of the store and walked down a few hundred feet to the Passumpsic River. No one saw him fall into the river. He was last seen on the highway bridge over the river. His body was found nearby in the river three days later. There was a slippery ledge along the shore overlooking deep water. Decedent could not swim. He was a "great fisherman", and his fishing poles and tackle were in the car. It had been his habit, while on business trips, after the business of the day was done, to look over the local fishing prospects. The jury might have believed that decedent went down to the river to see whether it was worthwhile to get out his fishing tackle, and that he accidentally slipped from the ledge into the water.

Defendant's more serious contention relates to the second part of the plaintiff's case, as to whether satisfactory proofs of accidental drowning had been furnished to the board of directors. It is urged that the jury could not reasonably have found that the directors should have been satisfied with the proofs submitted. When the body was found the sheriff came to the scene and summoned a local doctor to sign a death certificate. Decedent was a total stranger to them both. The doctor asked how it happened and the sheriff replied, "I guess another suicide." The doctor wrote on the death certificate: "Principal cause of death, Drowned, Contributory causes, Suicide." They had no facts to substantiate this fateful conclusion. At the trial both the sheriff and the doctor abjectly confessed themselves in error for the casual way in which they did this business.

The plaintiff reported her husband's death and put in her claim on a form prescribed by the board of directors. With her claim she was required to furnish, and did furnish, a copy of the death certificate indicating suicide. At this point the directors quite reasonably were not

prepared to pay the claim. Representatives of the company talked with the widow, learning from her the background relating to her husband's habits, his business and personal affairs. This she later embodied in a detailed letter to the directors, received November 6, 1936. They also made some investigation into the circumstances of the drowning. In response to the invitation of the directors the plaintiff on February 10, 1937, submitted supplementary proofs consisting of affidavits by the sheriff, the doctor, and the storekeeper in East Barnet. The doctor deposed that he knew of no facts nor had he ever observed anything that would indicate to him that Mr. Sanders committed suicide; that he wrote the word "suicide" in the death certificate "solely because of statements made to me." The sheriff deposed that "Upon careful consideration and reflection, I am now of the opinion that I know of no facts, nor did I at any time observe anything, in regard to the body of Roy L. Sanders that would indicate or prove to me that Mr. Saunders (sic) committed suicide." The storekeeper deposed that he had been with decedent about ten minutes before his watch stopped; that decedent was in good spirits and showed nothing unusual in appearance, action or speech; that he observed nothing to indicate suicide; that the body was found in fifteen feet of water near rocks on the shore from which decedent could have slipped off. The directors replied that the affidavits were pertinent, but that they wished to be satisfied on one further point. They called attention to the statement in the doctor's affidavit that he had written "suicide" "solely because of statements made to me"; and they said they would like to have from the doctor an affidavit setting forth the statements which were made to him. The plaintiff's attorney replied that he did not deem it advisable to reveal further facts in this matter; "that the information furnished, together with the detailed report of your trained investigator that covered the case completely, should be a sufficient basis for your directors to arrive at a conclusion." Ultimately the directors voted to disallow the claim.

■ It is earnestly contended that this request by the directors for further information was reasonable and that upon refusal of the plaintiff to comply therewith, the directors were justified in not regarding the proofs as satisfactory. This is an argument which might legitimately be addressed to the jury, but we are not persuaded that the conclusion is compelled as a matter of law. There would have been nothing to the case but for the slipshod manner in which the death certificate had been prepared. We cannot say that the jury were unreasonable in concluding that the directors should have been satisfied with the proofs, considering all the facts and circumstances made known to them, and considering that the statement in the death certificate, which had given them pause, had been disavowed by the sheriff and the doctor.

■ A remaining contention of the defendant has to do with the jury's verdict assessing interest from April 27, 1937. Under the contract the benefit was not payable until ninety days after the furnishing of satisfactory proofs to the board of directors. Counting back ninety days from April 27 would indicate January 28, 1937, as the date on which, in the jury's opinion, the directors should have been satisfied with the proofs. We assume that the jury were correctly instructed on this point; the charge is not in the record and no objection or exception was taken to it. There is nothing in the record to explain the selection of this particular date. The jury could have found, as above indicated, that the directors should have been satisfied on February 10, 1937, when the supplementary proofs were submitted. This would make the interest run from May 11, 1937, instead of April 27. This minor error in calculation could have been corrected by the jury if counsel had called it to the court's attention at the time the verdict was rendered. The record does not indicate that it was called to the court's attention at that time. If there were any merit in the suggestion that the jury's assessment of interest indicated a confusion in the minds of the jurors as to the issues generally, the appropriate place to urge this was in the motion for a new trial addressed to the discretion of the trial judge; but here again counsel failed to raise the point. The suggestion was advanced for the first time in appellant's statement of points on appeal. This was too late. The point has no bearing on the alleged error of the trial judge in refusing under Rule 50(b) to set aside the verdict and judgment and to enter judgment in accordance with defendant's motion for a directed verdict.

The judgment of the District Court is affirmed, with costs to the appellee.