[Civ. No. 2683.   Fourth Dist.   Apr. 27, 1942.]

ELIZABETH F. SAECKER, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Respondent.

Alfred Siemon and Bennett Siemon for Appellant.

Borton, Petrini, Conron & Borton for Respondent.

BARNARD, P. J.—This is an action upon a rider to a life insurance policy providing for the payment of an additional $1,000 in the event the death of the insured occurred through accidental means and was not suicidal in nature. The court found that the insured died as a result of self-destruction and the plaintiff, the widow of the insured, has appealed.

Appellant's main contention is that the evidence is insufficient to sustain the finding to the effect that the insured committed suicide. The deceased was found on the cement pavement below a window of a room on the third story of a hospital. It is conceded that his death occurred as a result of his falling from this window and there is no direct evidence as to whether that fall was accidental or whether the deceased intentionally jumped or threw himself from the window. The appellant relies upon the presumption against suicide and contends that all of the evidence supports rather than rebuts that presumption.

The insured, a man 63 years of age, had been ill for three years, suffering from a painful affliction. On January 1, 1940, he was taken to this hospital for the purpose of being built up so that he could more safely undergo a surgical operation. On the evening of January 4, the appellant and their daughter visited him and he appeared to be hopeful and

more cheerful than he had been for a long time. When the appellant left the hospital that evening her husband asked her to bring his electric razor the following morning.

Near the foot of the insured's bed was a window the ledge of which was 27 inches from the floor and the window itself would open to a width of 31 inches. This window opened into a light well. At about 9 o'clock that night a nurse went into the room and raised the window about 8 inches from the bottom and adjusted the shade to the level of the window. The window screen was hooked. The insured was then in bed attired in a short hospital gown. At about 10 o'clock that night the nurse looked into the room and the insured was in bed and apparently quiet. At 10:45 o'clock that night the body of the insured was found on the concrete pavement of the light well at a point just below the window. He was then dressed in pajama jacket and trousers and had on sheepskin slippers. Immediately thereafter the room was examined and the window shade was found to be up, the window fully open, the screen unhooked and there was no damage to the blind, to the screen or to the window.

The appellant argues that the decedent's fall can be explained in other ways which are more reasonable than suicide; that he may have put on his trousers to go across the hall to the toilet; that he may have become dizzy and slipped and fallen while attempting to open the window; that he may have leaned out to observe something outside and lost his balance; that the facts that he was more cheerful and hopeful and requested that his razor be brought to him are inconsistent with an intention to commit suicide; and that there is nothing in any of the evidence which "necessarily negatives the presumption against suicide."

The appellant particularly relies upon the case of *Byers* v. *Pacific Mutual Life Ins. Co.*, 133 Cal. App. 632 [24 P. (2d) 829], as being factually similar to the instant case. In that case, however, the jury resolved the facts against the theory of suicide. While a similar finding might have been sustained here it is quite a different matter to hold that the evidence compels such a finding. It may here be said that the evidence points with equal, if not greater, force toward suicide than toward accident. (See *Valentine* v. *Provident Mut. Life Ins. Co.*, 12 Cal. App. (2d) 616 [55 P. (2d) 1243].) The entire question is purely one of fact and not one of law and the

evidence, with the reasonable inferences therefrom, supports the finding made.

The appellant further contends that certain evidence relating to prior statements of the insured with respect to committing suicide was incompetent and improperly received. The appellant testified, without objection, that her husband "had said he wished he could (commit suicide) because he was in so much pain, but he had never said that he would"; that he had no pistol at home; that "I had taken everything of that kind away immediately after he first said he wished he could"; that he had not mentioned taking his own life shortly prior to January 4, 1940; and that he had not mentioned such a thing "for quite a while; he just kind of joked about it sometimes when he was feeling bad, but hadn't talked seriously about it." The respondent's witness, Dr. McLain, was then allowed to testify as to a conversation he had with the appellant on February 15, 1939, over the objection that such testimony called for hearsay and was too remote. He testified that on that occasion the appellant stated to him that on the previous night she had gone downstairs and found her husband holding an empty revolver and looking for some shells, and that she had then put away all sharp instruments as a precaution. While the admission of this testimony seems questionable, it was a statement of what the appellant had herself told the witness and hardly hearsay as to her, and it did contradict or impeach her prior testimony to the effect that she had not put all sharp instruments away. While that conversation occurred some eleven months before the death of her husband it was during his long illness. Moreover, this testimony added nothing material to the facts previously testified to by the appellant. Without further discussing the question as to the admissibility of this evidence any possible error could not be held sufficiently prejudicial to justify a reversal in view of the other evidence supporting the finding of suicide, and especially since there was no jury.

Another doctor was allowed to testify, over the appellant's objection, that on January 1, 1940, the insured told him that he had finally reached the conclusion that he was going to have something done for himself; that sometime before he had thought that possibly the best thing for him to do was to commit suicide; that he had decided that this was not the thing to do; and that he had decided to go to a hospital to see if something could not be done to cure him. As the trial

judge remarked regarding these statements of the insured, "The statement would seem to be, his statement, instead of being an intention to destroy himself, it would be that of a man that had decided to preserve himself." This testimony was favorable to the appellant, rather than otherwise, and furnishes no ground for a reversal.

The only other point raised is that the court erred in finding that an allegation of the complaint is untrue. This allegation was that "due proof of the death of H. Julius Saecker as required by the terms and conditions of said policy and supplemental contract" had been made. The court found this to be untrue. It is admitted that the appellant made due proof of the death of the insured, and the only controversy was as to whether that death had occurred in a manner which was within the terms of the supplemental contract, that is, through accidental means and not by suicide. It is obvious that the court, in finding that this allegation of the complaint was not true, intended merely to find that death had not occurred in the manner and under the conditions which are within the terms of the supplemental contract. While the findings could be improved in this respect the matter is of little importance here, since the finding to the effect that the deceased died by suicidal intent is controlling whether or not the proper preliminary proof of death was furnished to the insurer.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.