481 F.2d 201
 Jean T. TERKILDSEN, formerly doing business under the firm
name and style of Singer and Carlberg,
Plaintiff-Appellant-Appellee,
v.
Eric H. WATERS et al., Defendants-Appellees-Appellants.
 Nos. 842, 958, Dockets 73-1050, 73-1149.
 United States Court of Appeals,
Second Circuit.
 Argued May 29, 1973.
Decided June 27, 1973.
 
 Peter W. Quinn, New York City (Martin J. Cunningham, New York City, on the brief), for plaintiff-appellant-appellee.
 H. William Rosenblum, New York City, for defendants-appellees-appellants.
 Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 This bitter litigation is an object lesson on the virtues of the individual calendar system and the burden imposed by diversity jurisdiction on the increasingly overcrowded dockets of the federal district courts.[1] The dispute grows out of a contract between competitors, both then based in New York City, in which plaintiff Jean T. Terkildsen sold her business to defendants, co-partners doing business under the name of Haseltine, Lake and Co. The complaint was filed in October 1968, and the five and one-half pages of docket entries in the United States District Court for the Southern District of New York show that no less than ten judges of that court were required to deal with aspects of the case before it was eventually tried almost four years later before Dudley B. Bonsal, J., sitting without a jury.[2] After three days of trial and the receipt of additional letters and papers, Judge Bonsal found for plaintiff on one of her three causes of action in the amount of $18,663.60 with pre-judgment interest at six per cent, and for defendants on one of their two counterclaims in the amount of $22,573.43 with six per cent interest from the date of judgment.[3] True to form, both parties appeal and make arguments that, in large part, were never raised below. We affirm the judgment of the district court.
 
 
 2
 * Prior to March 8, 1968, plaintiff Terkildsen owned and operated Singer and Carlberg, an international agency engaged in the business of registering trademarks and patents in foreign countries on behalf of American clients, principally attorneys. On that date, plaintiff entered a contract with defendants in which she agreed to sell her business. The purchase price consisted of (1) a $22,500 down payment allocated to various assets being transferred; and (2) five per cent of gross billings, payable in monthly installments, collected by Haseltine, Lake from plaintiff's former clients from March 1, 1968 to March 1, 1973. The installment sum due under the gross-billings provision was to be determined on the basis of semi-annual accountings furnished to plaintiff by defendants. While defendants paid the first component of the purchase price immediately, it is undisputed that they owed plaintiff $18,663.60 under the second. Accordingly, Judge Bonsal entered judgment in plaintiff's favor for this principal sum; at least from this aspect of the judgment, no appeal is taken.
 
 
 3
 Under a separate provision of the contract of sale, plaintiff-seller covenanted
 
 
 4
 to reimburse Purchaser to the extent of moneys paid to Seller by her clients for services to be rendered to the extent that such services were not rendered. Purchaser reserves the right to offset any such prepaid fees against the periodic payments herein-above referred to, to be made on account of 5% of gross billings collected by the Purchaser. . . .
 
 
 5
 Defendants' counterclaim is based on this contractual clause and upon a letter, mailed to plaintiff's former clients shortly after execution of the contract over the signatures of both firms (the joint letter), which stated in part that
 
 
 6
 the predecessor firm remains responsible for all past commitments, financial and otherwise, assumed and incurred prior to March 1, 1968, and the successor firm accepts responsibility for all future commitments made from and after March 1, 1968.
 
 
 7
 In a memorandum opinion, Judge Bonsal found that plaintiff was liable to defendants in the sum of $22,573.43 under the terms of the undertakings set forth above. Plaintiff appeals from that determination.
 
 
 8
 Plaintiff argues that there "is absolutely no evidence that the defendants ever paid a penny of the $22,573.43 for which they were awarded judgment. . . ." However, defendants adequately established certain critical facts. First, when Haseltine, Lake acquired plaintiff's business, they acquired client accounts in which work on pending matters remained uncompleted. Second, client pre-payment of fees for future work to be performed was customary in the profession, and plaintiff conceded that she had been paid for work not yet completed. Third, in accord with the joint letter, defendants were thereafter billed in the sum of $22,573.43 by "correspondents" or "associates" situated abroad for services performed by them to facilitate the filing of patent or trademark applications in foreign countries. Finally, payment to foreign associates for services rendered is a significant aspect of work performed by an international agency; in monetary terms, from 50 to 75 per cent of fees received from clients are generally paid over to foreign associates.
 
 
 9
 If the reimbursement clause of the contract means what it seems to say, this proof was sufficient to permit recovery under the counterclaim. Plaintiff was pre-paid to do work which she did not do, and the extent of work undone is reasonably measured by the sums claimed by foreign associates, as reflected in the bills or debit notes they submitted to defendants as contemplated by the joint letter. Plaintiff contends, however, that defendants cannot recover absent proof that bills presented by the foreign associates for work performed for plaintiff's clientele were in fact paid by Haseltine, Lake; plaintiff argues that no shred of documentary proof of defendants' disbursements-e. g., cancelled checks, receipts-was ever introduced into evidence. We believe that though the testimony as to payments was not crystal clear, it was sufficient to permit the district judge to find as he did. Defendant Waters, the principal co-partner in Haseltine, Lake, adequately explained the absence of cash disbursements to the foreign associates and correspondents. These individuals were paid instead through internal bookkeeping procedures of Haseltine, Lake. Accounts receivable due from these associates and correspondents were cancelled against accounts payable to them, representing bills for services rendered on behalf of plaintiff's clients.[4] In short, under a reasonable view of the evidence, and regardless of the scope of our own review, cf. Meyers v. Selznick Co., 373 F.2d 218, 222 & n. 2 (2d Cir. 1968), we see no basis for setting aside the district court's decision on the counterclaim.
 
 II
 
 10
 The remaining questions on appeal concern the award to plaintiff of prejudgment interest on her claim. Defendants assert in a cross-appeal that pre-judgment interest is inappropriate on the facts of this case; plaintiff contends that the six per cent rate for that interest is too low. In support of their position, defendants rely on their contractually reserved "right to offset" sums owed by plaintiff under the reimbursement clause against periodic installments payable over five years to plaintiff under the 5%-of-gross-billings component of the purchase price. If defendants' computations are correct, then throughout the contractual term, by operation of this right to offset, plaintiff always owed defendants more than they owed her. If so, defendants argue that plaintiff has never been deprived of the use of any funds owed and should not recover interest to compensate for such deprivation. See Candiano v. Moore-McCormack Lines, Inc., 407 F.2d 385, 387 (2d Cir. 1969).
 
 
 11
 Putting to one side the question whether defendants' "right to offset" did not require some affirmative action on their part in view of the common law principle that mutual debts, even when arising out of the same transaction, do not cancel each other,[5] we need not and should not consider defendants' argument. Defendants did not raise in the district court the propriety of pre-judgment interest for plaintiff, even though her complaint included a specific prayer for such interest and though her proposed findings of fact and conclusions of law requested "interest as it may appear." It is true that defendants' proposed findings took the position that a net judgment should be entered in their favor because plaintiff owed them more than they owed her, but the issue of pre-judgment interest for plaintiff was nowhere mentioned. Far more significantly, following the judge's opinion directing that pre-judgment interest be included in plaintiff's recovery, counsel for defendants sent Judge Bonsal a letter accompanying a proposed judgment, in which a method for computation of plaintiff's pre-judgment interest at six per cent was detailed. At no point in this letter, nor at anytime thereafter, did defendants challenge the award to plaintiff of pre-judgment interest on the ground that they had exercised their right to offset, though they might have done so even after judgment was entered by a motion under Fed.R.Civ.P. 59(e). Cf. Gilroy v. Erie-Lackawanna R.R., 44 F.R.D. 3 (S.D.N.Y.1968).[6]
 
 
 12
 Under these circumstances, we see no reason to depart from the general rule of practice which forecloses appellate consideration of issues not raised below. See, e. g., Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Adherence to the rule is particularly apt where, as here, factual questions may have been implicated as to which the judge made no findings because the issue was not directly raised[7] and equally, where considerations underlying a subtle legal issue could have been exposed and distilled by the able district judge so as to facilitate more informed consideration by this court. We have previously suggested that the general rule is fully applicable to questions of pre-judgment interest, see Julien J. Studley, Inc. v. Gulf Oil Corp., 407 F.2d 521, 529 n.8 (2d Cir. 1969), and this seems the view held in other circuits. See Bank of America National Trust and Savings Association v. Rocco, 226 F.2d 297, 302-303 (3d Cir. 1955) (en banc), rev'd on other grounds sub nom. Bank of America National Trust and Savings Association v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); Eastern Commercial Travelers Accident Ass'n v. Sanders, 108 F.2d 643, 646 (1st Cir. 1940); Smith v. Boise City, 104 F. 2d 933, 936-937 (9th Cir. 1939); cf. Arkla Exploration Co. v. Boren, 411 F. 2d 879, 883-884 (8th Cir. 1969).[8] Accordingly, we decline to consider an issue so belatedly raised.
 
 
 13
 We come, finally, to plaintiff's contention that she is entitled to pre-judgment interest at a rate greater than six per cent. Briefly put, plaintiff's argument is that she should get the benefit of the higher legal rate of interest in effect when installments owed her became due.[9] This issue is a troublesome one because it is not clear whether the amendment of NYCPLR Sec. 5004, effective September 1, 1972, providing that interest shall be at the rate of six per cent per annum except where otherwise provided by statute, applies (with regard to pre-judgment interest) retroactively to affect all claims not yet reduced to judgment or applies only to claims accruing thereafter.[10] However, plaintiff failed to call the issue to the attention of the district court. In what may be an effort to sidestep this impediment, she argues that the judgment entered in her favor is defective for want of specificity. This is obviously not so, because the judgment states clearly that the pre-judgment interest due plaintiff on her recovery of $18,663.60 is $3,379.58.[11] In any event, we rest our refusal to consider plaintiff's argument on another ground. Plaintiff's notice of appeal stated only that she
 
 
 14
 appeals . . . from that portion of the final judgment . . . wherein the District Court entered a judgment on [defendants'] first counterclaim . . . for . . . $22,573.43. . . .
 
 
 15
 We have often enough manifested our willingness to construe notices of appeal liberally, e. g., Bancroft Navigation Co. v. Chadade S.S. Co., 349 F.2d 527 (2d Cir. 1965). We have expressed our view that the federal appellate rule requiring designation of "the judgment, order or part thereof appealed from"[12] is a "means of identification and not . . . a step in appellate pleading [, f]or assignments of error and other paraphernalia of ancient appellate pleading are done away with." Val Marine Corp. v. Costas, 256 F.2d 911, 916 (2d Cir. 1958). In the same vein, Professors Moore and Ward have observed that
 
 
 16
 failure to designate a particular part [of a judgment] is not fatal if the intent to appeal from that part can fairly be inferred from the parts actually designated . . . .
 
 
 17
 On the other hand,
 
 
 18
 if the parts [of the judgment] are truly independent, the more likely inference from the designation of particular parts in the notice of appeal is that appellant does not desire review of parts not designated.
 
 
 19
 9 Moore's Federal Practice p 203.18, at 756.
 
 
 20
 We think that plaintiff's notice of appeal, designating only defendants' recovery on the counterclaim as the part of the judgment appealed from, clearly falls within the second category, and manifests an intent to leave the judgment on her own claim undisturbed. It seems that only after defendants took a cross-appeal challenging the award of interest on plaintiff's claim did plaintiff, as an afterthought, seek to enlarge her recoverable interest. As appellee with respect to the cross-appeal, she may not do so. See United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924). We cannot fail to notice that this leaves plaintiff and defendants with judgments of almost the same amount, see note 11 supra, after years of contentious maneuvering; this does not seem an inappropriate result.
 
 
 21
 Judgment affirmed.
 
 
 
 [1]
 See H. Friendly, Federal Jurisdiction: A General View, Pt. VII (1973)
 
 
 [2]
 Happily, under the rules now in effect in the Southern District, such waste of judicial resources should no longer occur. See Southern Dist. Calendar Rule 1
 
 
 [3]
 Plaintiff's other causes of action sought damages for slander and for malicious interference with employment contracts with her employees; Judge Bonsal dismissed these actions as altogether without evidentiary support. For the same reason, the judge also dismissed defendants' second counterclaim, which sought to enjoin plaintiff from breach of a contract not to compete
 
 
 [4]
 As Waters explained it, Haseltine, Lake had accounts receivable from the same individuals because "many" of the foreign associates were also paying clients of the firm with respect to filings executed by it in the United States Patent Office
 
 
 [5]
 See 6 S. Williston, Contracts Sec. 887E
 
 
 [6]
 Defendants have followed, both in the district court and in this court, a similar pattern of ignoring the question of pre-judgment interest, if any, due on their counterclaim. Although defendants did request such interest in their answer, no findings of fact were ever requested as to when their claims for reimbursement had accrued, nor did defendants object, after the judge had rendered decision, to the absence of pre-judgment interest on that portion of the judgment in their favor. Finally, even now defendants do not argue to us that such interest was erroneously omitted. In light of all this, we consider the question no further
 
 
 [7]
 E. g., assuming that afirmative action by defendants was necessary, see text at note 5 supra, to enforce their "right to offset," did they take affirmative action? When was such action taken? Was it sufficient?
 
 
 [8]
 Unlike National Fire Insurance Co. v. Sequoyah County, 115 F.2d 232, 233 (10th Cir. 1940)-cited in 5A Moore's Federal Practice p46.02, at 1906 n. 9, for the proposition that interest allowed on a claim contrary to state law is a "fundamental error" which may be corrected on appeal though not raised below -there is no state statute here unambiguously foreclosing pre-judgment interest on the claim
 Nor, with but one exception, have we found any case in this circuit where interest issues were considered on appeal without having been raised below. The exception is United States v. L. N. White & Co., 359 F.2d 703, 714 (2d Cir. 1966), where, in the concluding paragraph of the opinion, the court devoted one sentence to affirming the district court's exercise of discretion in awarding pre-judgment interest, after pointedly complaining of failure to raise the point prior to appeal.
 
 
 [9]
 The rate determined by the State Banking Board under N.Y.Gen.Obl.Law Sec. 5-501 was 7 1/4% from July 1, 1968 to February 16, 1969 and 7 1/2% thereafter. Prior to July 1, 1968, the rate had been 6%
 
 
 [10]
 The memoranda of the Law Revision Commission indicate that the fixing of the rate of 6% would permit the administrative act of entering judgments with interest "to be accomplished efficiently and routinely without possible controversy over different rates for different periods," 1972 New York State Legislative Annual, "Memoranda of Law Revision Comm'n," at 89, which arguably would point to retroactive effect. But see Yamamoto v. Costello, 342 N.Y.S.2d 33, 37-38 (Sup.Ct.Nass. Co.1973); 5 Weinstein, Korn & Miller, New York Civil Practice p 5004.01 (1972)
 
 
 [11]
 This brought plaintiff's judgment to $22,043.18, almost equivalent to the $22,573.43 judgment recovered by defendants
 
 
 [12]
 This language now appears in Rule 3(c) of the Federal Rules of Appellate Procedure