Walter R Hart, J.
Plaintiff moves for summary judgment. The complaint purportedly alleges four causes of action wherein features of the first two causes are intermingled with each other and with the remaining causes. The first cause of action, which purportedly alleges primarily a cause of action for false arrest and imprisonment, also alleges some elements of a cause for malicious prosecution. The second cause of action is primarily predicated on the theory of malicious prosecution. The third cause of action sounds in conspiracy. The court is at a loss to comprehend what plaintiff attempts to add to the first three causes of action by the fourth cause of action set forth in the complaint.
From the affidavits and official documents and records adduced, the following undisputed facts appear:
On or about February 16, 1941, at about 8:45 p.m., one Murray Hammeroff was shot during the course of a holdup by two men near Stillwell and 25th Avenues in Brooklyn. The culprits escaped in a car being operated by a third man. Hammeroff described his assailants before he died. Thereafter, the police over a period of several months picked up a great number of suspects, interrogated and released them.
On Sunday, May 11, 1941, plaintiff, Santo Oaminito, was brought to a police station at about 6:00 p.m. At about the same time there were taken into custody two other men, Frank Bonino and Charles Noia. It was claimed at the trial that the latter two were the actual assailants while plaintiff was the driver of the getaway car.
Commencing about 9:00 p.m. on Sunday, May 11,1941, plaintiff was continuously interrogated by five or six police officers over a period of five hours until 2:00 a.m. the following morning, Monday, May 12, 1941. At 3:00 a.m. on Monday, May 12, plaintiff was locked in a cell in which there were no bed, blankets, spring or mattress, but only a wooden bench. At 10:00 a.m. *244 on Monday, May 12, the questioning was resumed. The interrogation continued all day, with several detectives each taking turns.
During this period members of plaintiff’s family, his friends, and an attorney retained by the family called at the station house where plaintiff was detained and tried to get information concerning his whereabouts. The police officers knew these facts but kept him incommunicado. Other than the police and the District Attorney, no one was permitted to see him until he was arraigned, 40 hours after being taken into custody.
During the afternoon of Monday, May 12, two women and a man were brought in to face the plaintiff. He was not told that they were detectives. Each falsely pretended to identify him as the person who was sitting at the wheel of the automobile at the time of the shooting which occurred in connection with the holdup. About 9:00 p.m. on Monday, May 12, 27 hours after having been taken into custody, he signed a confession. About 2:30 or 3:00 a.m. the following morning, Tuesday, May 13, plaintiff was first placed under arrest. He was brought to a Magistrate later that same day, more than 40 hours after having first been taken into custody. The police officers knew that the courts were open during this period for the purpose of arraignment of persons charged with crime.
Plaintiff had never been previously arrested or convicted.
The same or similar treatment was accorded the plaintiff’s alleged accomplices, Bonino and Noia.
It is undisputed that the only evidence tending to connect plaintiff with the crime was the confession extorted from him. Plaintiff was thereafter indicted by the Grand Jury on or about June 11, 1941. Other than the involuntary confession, the Grand Jury minutes fail to contain a scintilla of evidence to establish any nexus between the plaintiff and the homicide. In fact, upon the trial before Judge Braxcato in February of 1942, the court charged the jury that the confessions (made by plaintiff, Bonino and Noia under similar circumstances) were the sole evidence in the case to inculpate the defendants in that action, and that if they believed them to be involuntary, they were to acquit. Plaintiff, together with Noia and Bonino, was convicted of murder in the first degree with a recommendation of mercy on March 2, 1942 and was sentenced to life imprisonment.
The judgment of conviction was affirmed by the Appellate Division (265 App. Div. 960) and by the Court of Appeals (291 N. Y. 541). Applications for leave to reargue were denied (297 N. Y. 882; 307 N. Y. 686). Certiorari was denied by the *245 United States Supreme Court on August 14, 1954, with two Justices dissenting (348 U. S, 839).
On November 3, 1954, an order to show cause was signed by Judge James T. Foley of the United States District Court for the Northern District of New York bringing on an application to show cause why a writ of habeas corpus should not issue. On January 11, 1955 Judge Foley denied the application for the writ (127 F. Supp. 689).
Thereafter, an appeal was taken to the United States Court of Appeals for the Second Circuit from the order denying the plaintiff’s application for the writ of habeas corpus. On May 11, 1955, that court unanimously reversed the order of Judge Foley. In reversing the District Court, the United States Court of Appeals made the findings of fact set forth at the outset of this memorandum, observing that they were undisputed, and stated (United States v. Murphy, 222 F. 2d 698, 700-701):
“ These facts make it clear that the trial did not measure up to the standards prescribed by the due process clause of the 14th Amendment. The confessions obtained by these loathsome means were no more evidence than if they had been forged. Absent, then, any admissible evidence of guilt, the trial judge should have dismissed the indictment or directed a verdict of acquittal. To jail a man convicted without evidence of guilt is to impose ‘ involuntary servitude ’ which, ‘ except as a punishment for crime, ’ the Thirteenth Amendment forbids. Only in Erewhon, which recognized ‘ the crime of being maligned unjustly, ’ could this conviction be justified.
‘ ‘ Alone or together, neither the unlawful detention for many hours nor the deceit in confronting Caminito with disguised police officers who lied in identifying him would suffice to vitiate the confessions as unconstitutionally obtained. But those factors did aggravate the following unconstitutional practices which — even in the absence of those factors — rendered the confessions inadmissible: (a) The police interrogated him almost continuously for 27 hours, with but a brief interval for rest in a cell so badly equipped as to make sleep virtually impossible for a man already harried by the questioning, (b) During this long period, the police, in effect, kidnapped him: They kept him incommunicado, refusing to allow his lawyer, his family, and his friends to consult with him. ’ ’
Subsequent to the reversal of the District Court, and on May 20, 1955, an order was made by Judge Foley granting the petition for a writ of habeas corpus and directing that the plaintiff be discharged from the custody of the Warden of *246 Auburn Prison and that he be placed in the custody of the Commissioner of Correction of the City of New York for such further proceedings as justice may require upon the indictment.
Thereafter, a motion was made returnable at the County Court on May 31, 1955, to dismiss the indictment on the ground that the evidence (without the contaminated confession) was insufficient in law, or, in the alternative, to release the plaintiff on bail. Decision on the motion to dismiss the indictment was reserved pending an application by the People to the United States Supreme Court to review the determination of the United States Court of Appeals. The plaintiff was released on bail.
After the United States Supreme Court denied certiorari (350 U. S. 896), the motion to dismiss was renewed before Mr. Justice Joyce and was granted (N. Y. L. J., May 28, 1956, p. 12, col. 2). The decision on the companion motion on behalf of the defendant Noia is reported in 3 Misc 2d 447. The People appealed from Judge Joyce’s order of dismissal to the Appellate Division, which reversed the order, holding that the indictment was sufficient since the sufficiency of the evidence before the Grand Jury had to be determined on its face; and that irrespective of the inadmissibility of the confession at the trial, the indictment was based on sufficient proof (4 A D 2d 697). The Appellate Division, in reversing, stated (p. 698): “As it is conceivable, however unlikely, that on a new trial proof independent of respondent’s confessions may be adduced which will be sufficient to warrant his conviction, there should be a new trial ’ ’. The court, however, specifically directed that on a new trial, the confession be excluded irrespective of any proof which might otherwise be offered to show that such confessions had in fact been voluntary. Plaintiff appealed to the Court of Appeals, and the order of the Appellate Division was affirmed (3 NY 2d 596).
Thereafter, on May 1, 1963, the People moved for dismissal of the indictment before Mr. Justice Starkey, at which time the Assistant District Attorney stated: “These confessions [of plaintiff Bonino and Noia] are no longer available to the People, and we never had any other proof.” (Emphasis supplied.)
The convictions of Bonino and Noia were also vacated and the indictments dismissed.
As heretofore noted, none of the material facts detailed herein have been disputed by the city on this motion for summary judgment. Accordingly, we are confronted on this motion solely with questions of law. The first issue of law to be resolved, *247 one that is common to both the first cause of action for false arrest and imprisonment and the second cause of action for malicious prosecution, is that of “ probable cause.”
“ Probable cause ” has been defined “ as reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged.” (54 C. J. S., Malicious Prosecution, p. 982.) While in a false arrest and imprisonment action the burden of proof of justification (i.e., probable cause) for a detention is on the defendant (Burns v. Erben, 40 N. Y. 463, 466; Schultz v. Greenwood Cemetery, 190 N. Y. 276; Clark v. Nannery, 292 N. Y. 105), in malicious prosecution the onus is on the plaintiff to establish that a prosecutor lacked probable cause to institute a criminal prosecution (Burns v. Erben, supra; Schultz v. Greenwood Cemetery, supra; Clark v. Nannery, supra). Where, as here, there is no dispute as to the facts, and no conflicting inferences may be fairly drawn from the circumstances, the issue of probable cause may be disposed of by the court as a question of law (Halsey v. New York Soc. for Suppression of Vice, 234 N. Y. 1, 3; Babor v. Goldberg, 258 App. Div. 230, affd. 283 N. Y. 729). The facts here are undisputed. There are absolutely no circumstances shown which warranted the apprehension, detention and arrest of plaintiff. Defendant, in opposition to the motion for summary judgment and to raise a factual question with respect to the issue of probable cause, sets forth the testimony given by Detective Kenny (whose present whereabouts are unknown) at the criminal trial, wherein he stated that after having a conversation with Hammeroff, the victim, he sent out an alarm for the three men answering the description given to him by the decedent; that thereafter, from February to May, at “ Various times I visited the restaurants and pool rooms in the neighborhood and brought all the young fellows that were in there to the 62nd Precinct, Bath Ave. and Bay 22nd St., Brooklyn, N. Y., where they were questioned.”
‘ ‘ Q. For how long did that continue, did your investigation continue 1 A. From February until May.”
Nowhere does it appear that plaintiff, Noia and Bonino resembled the persons described by Hammeroff to the police officer, or that Hammeroff did or could see the getaway car and its driver, parked, according to a witness before the Grand Jury, some 10 feet in front of Hammeroff’s car at a time when darkness had set in. “ Mere rumor or information of a vague and indefinite nature * * * does not establish probable cause for a prosecution.” (54 C. J. S., Malicious Prosecution, *248 pp. 989, 990-991). Accordingly, the court concludes, as a matter of law, that the police officer lacked reasonable or probable cause to believe that plaintiff had committed a felony. Accordingly, the defendant, by its police officers, had no right to apprehend, detain or arrest the plaintiff.
Assuming, arguendo, however, that there had been probable cause and the detention and arrest were lawful in the first instance, nevertheless, because of the violation by defendant’s police officers of section 165 of the Code of Criminal Procedure, by failing to take plaintiff before a Magistrate for arraignment “without unnecessary” delay, the arrest would be unlawful a~b initio. It continued to be unlawful ab initio until the time when he was lawfully committed pursuant to a warrant. This is true even if, in fact, plaintiff were guilty of the crime for which he was convicted (Bass v. State of New York, 196 Misc. 177, 181, and cases there cited; Clark v. Nannery, 292 N. Y. 105, 108, supra). While plaintiff was arraigned shortly after he was formally arrested and booked, his detention in the precinct house for more than 33 hours prior to the formal arrest constituted an unlawful detention. As was stated in Henry v. United States (361 U. S. 98, 103): “When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete.” As pointed out by Mr. Justice Sobel in his work on “ Current Problems in the Law of Search and Seizure ” at pages 62 to 68, while the police may detain a person for investigation, the detention becomes an arrest if it is not on ‘ ‘ justifiable suspicion ”; it must be “ outdoors ”; it must be for a “ brief period ”; and no dominion or control may be exercised over the person of the suspect. Certainly, detention in a police station constitutes an arrest. So that plaintiff was, in fact, under arrest for all of the time he was interrogated and subjected to the coercion applied to compel his confession. This arrest and detention became unlawful ab initio and plaintiff would be entitled to recover damages from the commencement of his detention until the time of his arraignment.
Accordingly plaintiff would appear to be entitled to summary judgment on the first cause of action with respect to this tort. However, since the damages sustained for this 40-hour detention are relatively minimal in contrast with plaintiff’s claim for the 22-year period involved, and the allegations set forth are so entwined with the cause of action for malicious prosecution, an assessment of those damages at this time should not be had. The interests of justice would best be served if it were deter *249 mined by the triers of the facts at the trial of the remaining issues of the action.
In making this determination, the court is aware of the affirmative defenses set forth with respect to the alleged failure of plaintiff to comply with the statutory provisions relative to the service of a notice of claim and the commencement of the action (General Municipal Law, §§ 50-e, -50-i; Administrative Code of City of New York, § 394a-1.0 and CPLK. 215). In the opinion of this court the noncompliance with the statutes was caused by the action of the defendant; by its conduct in unlawfully placing plaintiff under restraint, it should not now be heard to complain of plaintiff’s failure to comply with the conditions precedent to the commencement of the action which it frustrated. The situation is analogous to one where a defendant in an action for breach of contract is not permitted to claim that plaintiff failed to perform a condition precedent, the performance of which was prevented by defendant’s conduct (cf. Patterson v. Meyerhofer, 204 N. Y. 96, 100, 101).
It has been held that a cause of action for false imprisonment does not accrue until the party has been discharged from restraint, including the time he was on bail (La Curto v. Brooklyn Nat. League Baseball Club, 6 Misc 2d 637; Tranberg v. County of Nassau, 28 Misc 2d 275; Zimmerman v. City of New York, 40 Misc 2d 179). It would therefore appear that in view of the fact that the indictment against plaintiff was not dismissed until 1963, the necessary statutory prerequisites to the maintenance of the action were complied with. Since, however, there may be an arguable question of law that the false imprisonment here discussed of some 40 hours was complete when the arraignment took place, and that the cause of action accrued at that time, the issue will be referred to the trial court for determination.
With respect to plaintiff’s claim for damages for the imprisonment subsequent to the judgment of conviction, it may be determined as a matter of law that plaintiff is not entitled to any recovery therefor under the theory of false imprisonment. The law is well settled that if the imprisonment or detention is pursuant to a judgment of a court of competent jurisdiction, which is regular on its face, no cause of action accrues if the judgment is thereafter set aside (22 N. Y. Jur., False Imprisonment, p. 423; 35 C. J. S., False Imprisonment, p. 660). This rule is best exemplified by the statement in Houghtaling v. State of New York (11 Misc 2d 1049, 1056): “ Imprisonment which is authorized by process which is regular on its face and is issued
*250 by a court having acquired jurisdiction is lawful and cannot give rise to a cause of action for false imprisonment even though the process was erroneously or improvidently issued. * * * (Fischer v. Langbein, 103 N. Y. 84, 93; Emmerich v. Thorley, 35 App. Div. 452; Schall v. Irwin, 120 Misc. 573, affd. 212 App. Div. 834; Douglas v. State of New York, 269 App. Div. 521, affd. 296 N. Y. 530; Ann. 145 A. L. R 711, 730.) ” In Marks v. Townsend (97 N. Y. 590), defendant had caused plaintiff’s arrest in a civil action on a warrant which was subsequently dismissed on affidavits showing his previous arrest in an action by the same parties on substantially the same grounds. In affirming a nonsuit, the Court of Appeals .stated (596-597): “A warrant, granted under such circumstances, protects against an action for false imprisonment, not only the judge who granted it, but the party who procured it and instigated its service. * * *
“ Even malicious motives and the absence of probable cause do not give a party arrested an action for false imprisonment. They may aggravate his damage, but have nothing whatever to do with the cause of action. Hence if in this case the defendant had intentionally withheld from the judge who granted the warrant the fact of the plaintiff’s prior arrest, that fact would have been quite pertinent to maintain an action for malicious prosecution, but would have not laid the foundation for a recovery in an action for false imprisonment. ’ ’
The case of Williams v. State of New York (9 A D 2d 415, affd. 8 N Y 2d 886), relied on by the plaintiff, is not in point. There it was found that the committing court lacked jurisdiction since the complaint on its face was insufficient as a matter of law to charge the plaintiff with a crime.
Accordingly, as a matter of law, plaintiff cannot prevail on the cause of action insofar as it relates to his confinement in a State prison on the theory of false imprisonment.
With respect to plaintiff’s cause of action for malicious prosecution, it is to be first observed that the essential elements of such a cause of action are set forth in the Restatement of the Law of Torts (§ 653) as follows:
‘ ‘ Elements of a cause of action.
“ (1) A private person [i.e., including police officers but not District Attorneys] who initiates criminal proceedings against another who is not guilty of the offense charged is liable to him for the harm done thereby if the proceedings “ (a) were initiated “ (i) without probable cause, and
*251 “ (ii) primarily because of a purpose other than that of bringing an offender to justice [i.e., malice], and
“ (b) have terminated in favor of the accused.”
Clearly, as heretofore stated, criminal proceedings against this plaintiff were initiated without reasonable cause and, absent the “forged” confession, there was absolutely no basis for them; and the criminal proceedings “ have terminated in favor of the accused.” Defendant on this motion claims that the indictment by the Grand Jury and the conviction by the petit jury establish irrefragably a presumption of probable cause sufficient to defeat the action. While this is a general rule, it does not apply under the circumstances of this case since the presumption may be rebutted by ‘1 proof that the indictment was obtained by * * * improper or fraudulent means ” (54 C. J. S., Malicious Prosecution, p. 997) or that the judgment of conviction 1 ‘ was obtained by fraud * * * or other undue or unlawful means”. (54 C. J. S., Malicious Prosecution, p. 1000; emphasis supplied.) (Cf. Staton v. Mason, 119 App. Div. 437, 439; Simmonds v. Sowers, 253 App. Div. 819.) The holding in Hopkinson v. Lehigh Val. R. R. Co. (249 N. Y. 296), cited by defendant, is not authority to the contrary. Defendant, by its police officers, by the “improper”, “fraudulent”, “undue”, and “unlawful” means, coerced plaintiff and extorted from him a confession which the United States Court of Appeals has found, in effect, to be a forgery. Defendant, by its employees, with knowledge of its invalidity, caused to be exhibited to the Grand Jury and the trial jury the void confession which was the sole and proximate cause of plaintiff’s indictment and conviction. It may therefore be said as a matter of law that the presumption of probable cause normally attaching to an indictment and conviction has in this instance been completely nullified.
The remaining facet of the cause of action for malicious prosecution is the element of “ malice ”.
Malice connotes the doing of a wrongful act done intentionally without just cause or excuse (54 C. J. S., Malice, p. 917). In American Guild of Musical Artists v. Potrillo (286 N. Y. 226, 231): “Malice in common acceptation means ill-will against
a person, but in its legal sense it means a wrongful act done intentionally without just cause or excuse. (Colwell v. Tinker, 169 N. Y. 531, 537.) ” A wrongful act within the meaning of the definition is “ any act which, in the ordinary course, will infringe on the rights of another to his damage, except it be done in the exercise of an equal or superior right * * *. The act must have been done either with an intent to inflict injury, or *252 under such circumstances that the law will imply an evil intent, or it may be implied from reckless disregard of another’s rights and interests.” (54 C. J. S., Malice, p. 922; italics added.)
In discussing malice with respect to an action for malicious prosecution, it has been said:
‘ ‘ Legal malice, as distinguished from actual malice, is sufficient to sustain an action for malicious prosecution, at least as far as the recovery of compensatory damages is concerned, although something more than legal malice is necessary to sustain a recovery of exemplary or punitive damages, as discussed infra § 114.
F Improper or sinister purpose or reckless disregard of rights of others. In some decisions the malice essential to give a cause of action for malicious prosecution has been described as any improper or sinister purpose, or any wanton or reckless disregard of the rights of others. However, it has been held that this rule has no reference to an ordinary act of negligence and that, unless the injury complained of was intentional or so reckless or wanton as to indicate bad faith, malice is not to be inferred therefrom.” (54 C. J. S., Malicious Prosecution, p. 1005.)
An exemplification of the adoption of the foregoing definition of malice may be found in the language of the Court of Appeals in Dean v. Kochendorfer (237 N. Y. 384, 389): “ Want of probable cause and malice are seldom established by direct evidence of an ulterior motive. They often rest upon circumstances such as the relation of the parties and the object sought or accomplished. Where malice or any improper or wrongful motive, or lack of probable cause exists it may be inferred that the act was malicious. Defendant might have acted in the honest and reasonable belief that plaintiff was guilty of disorderly conduct, but his good faith would not exonerate him if the facts themselves as presented to him did not constitute disorderly conduct. (Carl v. Ayers, 53 N. Y. 14, 17; Fagnan v. Knox, 66 N. Y. 525, 528; Mulder v. U. S. Slicing Mach. Co., 228 N. Y. 88, 93; Director Gen. of Railroads v. Kastenbaum, 263 U. S. 25.) ”
As may be gleaned from the foregoing quotation from Dean v. Kochendorfer {supra), malice may be inferred by the trier of the facts from the circumstance that there was a lack of probable cause for the institution of the criminal proceedings. This inference may not be drawn by the court on a motion for summary judgment. The trial court could not direct a jury to draw such an inference. The rule is succinctly stated in Prosser on Torts, Second Edition (p. 660): “ it is generally agreed that the lack of probable cause may give rise to an inference of malice, *253 sufficient to carry the question to the jury. * * * [But] that the jury may reject the inference if it sees fit.” In Halsey v. New York Soc. for Suppression of Vice (234 N. Y. 1, 7, supra) the court observed: ‘ ‘ The jury was told that malice was to be presumed if there was no probable cause for the prosecution. This is not an accurate statement of the law. Under such circumstances malice may be presumed. It is not an inference which the jury is required to draw. (Stewart v. Sonneborn, 98 U. S. 187, 193.) ” (See, also, Sidorsky v. Lemkin, 188 N. Y. S. 401 [App. Term, 1st Dept.].)
Accordingly, the motion insofar as it seeks summary judgment on the cause of action for malicious prosecution is denied.
With respect to plaintiff’s third cause of action for conspiracy, it is to be observed, first, that this cause of action adds nothing to the complaint. While it is alleged that the conspiracy existed between the police officers and others, the papers before the court disclose that the only ones charged with misconduct are police officers. Since defendant would be responsible under the doctrine of respondeat superior for the misconduct of any and all of the police officers in its employ, by alleging a conspiracy plaintiff has not added anything material to the first two causes of action set forth. Moreover, the charge of conspiracy in a civil action adds nothing substantively to the primary torts alleged. In a civil action for conspiracy, the tort is the illicit acts and not the agreement. The mere existence of conspiracy does not create a civil cause of action (Green v. Davies, 182 N. Y. 499, 503-505; Schussel v. Jamaica Investors (199 Misc. 172, 175; Heller v. Brown, 101 N. Y. S. 2d 355; Runs v. Silver, 198 Misc. 1032; Interstate Holding Corp. v. Hammerman, 101 N. Y. S. 2d 648). If plaintiff establishes to the satisfaction of a jury that defendant’s police officers were guilty of false arrest or malicious prosecution, since the State of New York has waived immunity pursuant to section 8 of the Court of Claims Act, the defendant City of New York would be liable for all of the damages sustained by the plaintiff by reason of the misconduct of its employees (Bernardine v. City of New York, 294 N. Y. 361).
As indicated above, the court finds on the undisputed facts that there was no probable cause for plaintiff’s detention, arrest or prosecution. Accordingly, the order to be entered herein may, pursuant to CPLR 3212 (subd. [g]), provide that this issue is deemed established for all purposes in the action.