750 F.2d 205
 40 Fed.R.Serv.2d 1174
 Lynn H. CONWAY, Appellant,
v.
The VILLAGE OF MOUNT KISCO, NEW YORK: Vincent Cerbone as
Justice of the Village Court, Village of Mount Kisco, New
York; Detective Larry McKinsey, Officer of the Village of
Mount Kisco Police Department, Defendants,
and
Bano Buick, Inc.; Alfred Martabano, individually and as an
officer of Bano Buick, Inc.; and Alfred V.
Martabano, individually and as an
officer of Bano Buick, Inc., Appellees.
 No. 91, Docket 83-7318.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 18, 1984.
Decided Dec. 11, 1984.
 
 Lynn H. Conway, Pro Se.
 George J. Calcagnini, Calcagnini & Lichtenstein, Mount Kisco, N.Y., for appellees Bano Buick, Inc., Alfred Martabano, and Alfred V. Martabano.
 Before OAKES and WINTER, Circuit Judges, and CLARIE, District Judge.*
 OAKES, Circuit Judge:
 
 
 1
 Lynn Conway, pro se, appeals from a judgment of the Southern District of New York, Mary Johnson Lowe, Judge, dismissing her complaint alleging causes of action under 42 U.S.C. Secs. 1983, 1985 (1982). The case arises out of a prosecution of Ms. Conway initiated by an automobile dealer for issuing a bad check in violation of N.Y. Penal Law Sec. 190.05 (McKinney 1975),[1] for purposes of paying a repair bill. Ms. Conway's complaint advances claims in the nature of those for arrest without probable cause, false imprisonment, malicious prosecution, and conspiracy. She complains that the defendants initiated and maintained a prosecution against her even though aware that her check had been dishonored not for lack of sufficient funds, but because she had ordered her bank to stop payment on the check.
 
 FACTS
 
 2
 The complaint named as defendants Bano Buick, Inc. ("Bano Buick"), a New York corporation doing business as an auto dealer; Alfred Martabano and Alfred V. Martabano ("the Martabanos"), president and vice president of Bano Buick, and father and son, respectively; Vincent Cerbone, the attorney for Bano Buick and, during the relevant time period, concurrently a justice of the Village of Mount Kisco; Larry McKinsey, a detective in the Mount Kisco police department, who arrested Ms. Conway; and the Village of Mount Kisco. From the record, the affidavits, and the exhibits attached thereto, including a portion of the transcript of the deposition of defendant Alfred V. Martabano, the following facts appear.
 
 
 3
 On or about April 15, 1977, Ms. Conway brought a 1973 Opel that she and her husband owned to Bano Buick for repair work in connection with the engine. Evidently, there was a dispute as to whether Bano Buick was to obtain Mr. Conway's prior approval concerning a replacement engine; in any event, a replacement engine was installed.[2] After some discussion[3] Ms. Conway drew a check dated May 10, 1977, in the amount of $431.34 on the Conways' joint account at Dry Dock Savings Bank. Evidently, when the automobile stalled and coughed on its way to her house, she went the next morning to the bank and stopped payment on the check.
 
 
 4
 Bano Buick subsequently received an advice from its bank, Bankers Trust Co., dated May 18, 1977, that Ms. Conway's $431.34 check had been unpaid by reason of "insufficient" funds. According to the senior Martabano's affidavit, Bano Buick then made unsuccessful attempts to contact Ms. Conway by telephone on seven separate occasions between May 31 and June 21, 1977, at which point the junior Martabano discussed the matter with Bano Buick's attorney, Vincent Cerbone, who advised that the issuance of a bad check constituted a violation of New York criminal law.[4] His affidavit further states that, on advice of counsel, Bano Buick contacted the police department of the Village of Mount Kisco, and it was not until June 30, 1977, that Ms. Conway was arrested and charged with issuing a bad check.
 
 
 5
 Ms. Conway's affidavit, on the other hand, states that the reverse side of the check shows quite clearly the "stop payment" disposition by the bank, and that furthermore the face of the check shows the word "stop." Attached to her affidavit is a copy of an undated letter from Dry Dock Savings Bank to her husband, Jeffrey Conway, stating that the bank's advice to him of May 25, 1977, should have been marked "payment stopped" instead of "insufficient" funds. Here we note that Ms. Conway makes the point in her brief, not made in her affidavit, that she expressly told the Martabanos that the check was not a problem of insufficient funds but a matter of stopped payment, and that the bank had erroneously marked the check "insufficient funds" and would verify that matter.[5] Nor does her affidavit include her current claim that when the Martabanos put the check through the bank a second time, the bank again returned it sometime after May 26, this time correctly marked "stop payment." Finally, her affidavit does not include her current claim that while her husband attempted to settle the matter with the Martabanos, the Martabanos attempted to collect the original debt, among other ways, by having her called late at night (11:00 p.m. on June 28, 1977), by Detective McKinsey, who threatened her with arrest.[6]
 
 
 6
 Notwithstanding the deficiencies in Ms. Conway's affidavit, her allegations are supplemented by the deposition testimony of the defendants. For example, it appears from the deposition of Alfred V. Martabano that the Martabanos consulted Vincent Cerbone after they had received the second advice indicating that the check had been dishonored because of the stop payment order, and that the second advice was shown to Attorney/Justice Cerbone. Alfred V. Martabano testified that Cerbone told him that the first return notice for insufficient funds "is a criminal whatever" and that "the second had no bearing upon it, because it is an action after the fact." He also told Martabano to take the check to the police department, which Martabano did, giving it to Detective McKinsey.
 
 
 7
 Beyond this, when the district court granted summary judgment in the defendant's favor, it noted that Conway's affidavit "includes no facts which would demonstrate that she tried to resolve or explain the matter to defendants." Her affidavit states, however, that the check facially indicated that payment had been stopped, as did the reverse of the check. It also states that before the Martabanos initiated their private criminal complaint, they were in possession of knowledge that payment had been stopped on the check and that the original advice indicating insufficient funds had been in error. It further states that Ms. Conway had never before bounced a check, and that it was "the custom and practice of Dry Dock Savings Bank to honor my checks even when the balance did not cover the amount being drawn." Finally, her affidavit states that "[i]n this case, I had sufficient funds to cover the check when drawn and had I not stopped payment on this check I would have made the deposit the morning following the day written." The record discloses that at the time the check was drawn, there was $441.37 in the account, although two checks had been drawn against it, one for $49.60 and one for $30, and were outstanding. Moreover, the record shows that on May 17, 1977, within the ten-day affirmative-defense requirement of N.Y. Penal Law Sec. 190.15,[7] the Conways deposited $686.97 to their account, giving them an outstanding balance on May 17 of $1,048.74. Thus Ms. Conway could argue with some persuasiveness that at all times there were sufficient funds available to cover the check.
 
 
 8
 It is undisputed that on June 30, 1977, Ms. Conway was arrested pursuant to an arrest warrant obtained from an acting village justice by Detective McKinsey on Alfred V. Martabano's complaint. Allegedly the detective but not the subscribing village justice had knowledge both of the correct reason that the check had been returned and of the bank's acknowledgment of its error. Ms. Conway also alleges that she was then imprisoned and detained at the Mount Kisco Village police station for some seven hours prior to being arraigned; and that, despite repeated demands and requests, the defendants refused to dismiss the complaint or subsequently to commence a jury trial. Eventually, the complaint was dismissed, with the consent of the district attorney. The senior Martabano's affidavit states, however, that while the criminal charge was dismissed on September 20, 1979, dismissal was not on the merits but rather, with the consent of the district attorney, "in the interests of justice due to the delay in prosecution." The docket entries in the village court, appearing in the record in uncertificated form (incorporated in Vincent Cerbone's affidavit seeking attorney's fees against Ms. Conway in the district court, incorporated in our record), show that an assistant district attorney appeared in court on August 30, 1979, before Justice Joseph Cerbone, who is apparently the brother of Vincent T. Cerbone, and made a motion to withdraw the charge pending against Ms. Conway, even though the docket entry of August 16, 1979, shows that Joseph Cerbone had disqualified himself from the case. The argument on August 30 by the assistant district attorney, according to the docket entry, was that the "time period has passed and makes [sic ] it extremely difficult to prepare for any kind of case." Justice Joseph Cerbone denied the motion. Finally, on September 20, 1979, the docket entry shows that "People move to withdraw the charge (Lynn Farrell, ADA) due to the period of time that has elapsed (not on the merits)." The person who inserted the parenthetical words "not on the merits" is not identified, but Vincent Cerbone does state in his affidavit that "[a]lthough I disqualified myself from acting on this case for the reasons stated in the attached decision dated 7 March 1978 (Exhibit D) [alluding to his prior representation of Bano Buick], I nonetheless decided the motion to dismiss the accusatory instrument because at the time, I was the only available town justice." The appropriateness of the docket entry parenthetical "not on the merits" is thus highly debatable, since it was made before a judge who not only had been counsel for the complainant and was a potential defendant in a false arrest, malicious prosecution, or civil rights action but also had disqualified himself in the criminal case previously thereto.
 
 
 9
 On January 15, 1980, Ms. Conway commenced an action in the Supreme Court of the State of New York, Westchester County, against the Martabanos, Bano Buick, Vincent Cerbone, Detective McKinsey, the Police Department of Mount Kisco, and the Village of Mount Kisco, seeking damages for assault, false arrest, and malicious prosecution. By order dated July 23, 1982, the court granted Detective McKinsey's motion for summary judgment relying upon his defense of quasi-judicial immunity and by order dated July 30, 1982, also granted his motion to dismiss for lack of jurisdiction due to improper service of summons. On May 14, 1982, the Appellate Division, Second Department, granted the Village of Mount Kisco's motion to dismiss for failure to serve a proper notice of claim.[8] Conway v. Bano Buick, Inc., 88 A.D.2d 609, 450 N.Y.S.2d 56 (1982).
 
 
 10
 On June 7, 1982, while Ms. Conway's state court action was pending, she filed her federal court complaint alleging civil rights violations for the same conduct by the state court defendants. On January 21, 1983, the federal district court granted Vincent Cerbone's motion for judgment on the pleadings, holding that the claims against him involved actions taken in his capacity as a justice of the village court and were therefore subject to absolute immunity. In a memorandum opinion and order dated March 14, 1983, the district court granted the remaining defendants' motions for dismissal, ordering that Ms. Conway's complaint be dismissed "in all respects." In granting Mount Kisco's motion to dismiss, the district court first upheld the preclusive effect of the prior judgment of the Appellate Division dismissing virtually identical claims against Mount Kisco, then rejected Mount Kisco's sovereign immunity defense, but finally dismissed the claims against Mount Kisco in view of Ms. Conway's failure to allege that her injury stemmed from a policy or custom authorized or observed by the municipality.
 
 
 11
 The district court also found partial merit in the Martabanos/Bano Buick defendants' statute of limitations defense. It first determined a Sec. 1983 action to be governed by the three-year statute of limitations defined at N.Y.Civ.Prac.Law Sec. 214(2) (McKinney 1972). It then held that Ms. Conway's claims based upon the alleged assault and false arrest on June 30, 1977, were barred, but that Ms. Conway's claim based upon the alleged malicious prosecution survived, citing Pauk v. Board of Trustees, 654 F.2d 856 (2d Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). The district court then proceeded to dismiss the malicious prosecution claim on the merits:
 
 
 12
 When plaintiff's check was returned by defendants' bank with a notice of insufficient funds, defendants repeatedly attempted to contact plaintiff by telephone. After each call met with no success, defendants concluded that plaintiff had issued the check in bad faith, and instituted the criminal complaint upon advice of counsel, and without malice.
 
 
 13
 The district court further found that the "defendants had reasonable cause for filing a criminal complaint," and that therefore Ms. Conway could not recover damages for malicious prosecution, citing Ivery v. United States, 686 F.2d 410, 413 (6th Cir.1982), cert. denied, 460 U.S. 1037, 103 S.Ct. 1428, 75 L.Ed.2d 788 (1983).
 
 
 14
 For the reasons below set forth, we affirm the judgment of the district court dismissing the claims against the Village of Mount Kisco, Detective McKinsey, and Vincent Cerbone in his capacity as Village Justice; but reverse the dismissal of the individual and conspiracy claims in the nature of malicious prosecution against the Martabanos, Bano Buick, and Vincent Cerbone in his capacity as an individual.
 
 DISCUSSION
 Notice of Appeal
 
 15
 The notice of appeal was filed by former counsel on April 21, 1983. It states that an appeal is being taken from "an Order dated March 14, 1983, granting defendant Martabanos' Motion to Dismiss Plaintiff's Complaint ... and from each and every part of said order." The appeal raises issues of timeliness and scope.
 
 
 16
 The timeliness of the appeal is an issue quickly resolved. The appellees misapprehended that the notice of appeal was filed on April 29, 1983, more than thirty days after the entry of judgment on March 25, 1983. The record clearly shows, however, that the notice of appeal was filed on April 21, 1983. Accordingly, this court has jurisdiction to review the appeal.
 
 
 17
 The issue concerning the scope of the notice of appeal is more complex.
 
 
 18
 1. Vincent Cerbone. Because the complaint alleged multiple claims against multiple parties, the January 7, 1983, order granting Cerbone's motion to dismiss could not be appealed until the district court disposed of the remaining claims against the remaining parties, absent a Fed.R.Civ.P. 54(b) certification that "there is no just reason for delay" upon an express direction for entry of judgment. No such certification was made. Disposition of the case did not occur until the final judgment was entered on March 25, 1983, pursuant to a memorandum opinion and order dated March 14 stating that the district court was "compelled to hold that the named defendants did not deprive the plaintiff of any constitutionally protected right," thus rendering the "[c]omplaint herein ... in all respects dismissed."
 
 
 19
 The notice of appeal, however, does not mention the order of January 17, 1983, though of course it refers to the order dated March 14, 1983. But this omission is of no consequence, for although an appellant is required, under Rule 3(c) of the Federal Rules of Appellate Procedure,[9] to "designate the judgment, order or part thereof appealed from," it is well settled that courts should apply a liberal interpretation to that requirement. See United States v. Ward, 696 F.2d 1315, 1318 n. 2 (11th Cir.), cert. denied, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); Cobb v. Lewis, 488 F.2d 41, 44-46 (5th Cir.1974); Terkildsen v. Waters, 481 F.2d 201, 206 (2d Cir.1973). See generally Foman v. Davis, 371 U.S. 178, 181-82, 83 S.Ct. 227, 229-30, 9 L.Ed.2d 222 (1962); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3949, at 355-56 (1977). Our task is to interpret the notice of appeal so as to remain faithful to the intent of the appellant, fair to the appellee, and consistent with the jurisdictional authority of this court. See Foman v. Davis, 371 U.S. at 181-82, 83 S.Ct. at 229-30; Terkildsen, 481 F.2d at 206.
 
 
 20
 We conclude that we should review the dismissal of the claims against Cerbone. The order dated March 14, 1983, dismissed the complaint "in all respects." It is perfectly clear that Ms. Conway had no desire to abandon the adverse disposition of her claims against Cerbone.[10] To be sure, the appellant, acting pro se, seems at times under the mistaken impression that prejudice has resulted from her failure to take an immediate appeal from the order dismissing her claims against Cerbone. But her notice of appeal reflects the intent to appeal all adversely determined dispositions from which an appeal could lawfully be taken at the time her notice of appeal was filed. No court would exploit a pro se litigant's misperception of its jurisdiction.
 
 
 21
 Of equal importance, however, is that our interpretation of the notice of appeal be fair to Mr. Cerbone. We note initially that although Rule 3(c) requires that those taking an appeal be specified in the notice of appeal, it does not require that appellees be specified. See Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1379 (10th Cir.1979); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 203.16, at 3-69 (2d ed. 1983). The distinction is, of course, justified by the fact that notice of appeal is served upon the appellees. In that respect, it appears that the notice of appeal here was served on all defendants by the clerk of the district court. Moreover, Ms. Conway's supplemental affidavit in opposition to Cerbone's ill-advised motion for attorney's fees, which was obviously served on him, expressly requested reinstatement of her claims against him, at least in his capacity as attorney. Cerbone, then, was certainly on notice that Ms. Conway was taking steps to preserve the vitality of her claims against him.
 
 
 22
 He has not, however, filed a brief on appeal, doubtless in the belief that he is not a party, an interpretation that is not unreasonable. Accordingly, although we here necessarily review the district court's order dismissing the claims against all defendants, we set forth instructions below that provide Mr. Cerbone with the opportunity to brief his position before the mandate of this court takes effect against him. See Perington Wholesale, 631 F.2d at 1380. Thus what we say as to him is preliminary and tentative only.
 
 
 23
 2. Detective McKinsey and the Village of Mount Kisco. Both Detective McKinsey and the Village of Mount Kisco are also proper appellees. While the dismissal of the claims against them was also not specifically mentioned in the notice of appeal, Ms. Conway clearly intended that no claim against any of the defendants be abandoned, the claims against the detective and Mount Kisco were dismissed in the same order that dismissed the claims against the Martabanos, and there is therefore even less justification for avoiding, on technical grounds, a review of those claims.
 
 
 24
 However, neither Detective McKinsey nor Mount Kisco has filed briefs on appeal, although they also were apparently served with notice of the appeal. Fairness would require that they also be afforded the opportunity to brief arguments in support of their respective positions, but, because we are required to affirm the dismissal of the claims against them, it will be unnecessary for them to do so.
 
 
 25
 3. The Martabanos and Bano Buick. The notice of appeal presents no problem with respect to the Martabanos and Bano Buick (hereafter subsumed in reference to the Martabanos).
 
 Statute of Limitations
 
 26
 The New York statute of limitations for false imprisonment or malicious prosecution actions is one year. N.Y.Civ.Prac.Law Sec. 215(3) (1972). However, this court in Pauk, 654 F.2d at 866, and Singleton v. City of New York, 632 F.2d 185, 189-90 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), held that a different statutory provision, N.Y.Civ.Prac.Law Sec. 214(2), prescribing a three-year limitations period, governs section 1983 claims, which are "significantly different from" state torts, Monroe v. Pape, 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring). There is no reason to depart from the holdings of Singleton and Pauk, which we incorporate herein by reference.
 
 
 27
 Applying section 214(2) to this case, it is clear that while Ms. Conway's civil rights claims based upon arrest or false imprisonment are barred by the statute, her civil rights claim based upon malicious prosecution is not. See Singleton, 632 F.2d at 193. We must therefore identify those defendants who remain liable for damages based upon Ms. Conway's malicious prosecution claim.The Claims Against the Village of Mount Kisco
 
 
 28
 Contrary to the holding of the district court, the doctrine of res judicata does not bar Ms. Conway's claims against Mount Kisco, because the prior judgment in the village's favor--a dismissal of Ms. Conway's claims for failure to serve properly a notice of claim--was not a judgment on the merits. See Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1232-33 (2d Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); Kaplan v. Bennett, 465 F.Supp. 555, 559 (S.D.N.Y.1979). See generally Restatement (Second) of Judgments Sec. 20(2) (1982). The district court, however, correctly held that because Ms. Conway did not allege that her injury stemmed from the execution of a custom or policy of Mount Kisco, the village cannot be liable under Sec. 1983. See Owen v. City of Independence, 445 U.S. 622, 657-58, 100 S.Ct. 1398, 1418-19, 63 L.Ed.2d 673 (1980); Monell v. Department of Social Services, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2035-37, 56 L.Ed.2d 611 (1978). Dismissal of the claims against Mount Kisco was thus correct.
 
 The Claims Against Detective McKinsey
 
 29
 Detective McKinsey was granted summary judgment on July 23, 1982, in Ms. Conway's state court action, which alleged claims virtually identical to the claims in her Sec. 1983 action. Although the supreme court granted summary judgment to Detective McKinsey on the dubious ground that McKinsey, a member of the Mount Kisco police department, was entitled to quasi-judicial immunity, see, e.g., Whitmore v. City of New York, 80 A.D.2d 638, 640, 436 N.Y.S.2d 323, 325 (1981) (city may be liable for conduct of police officers constituting malicious prosecution), appeal dismissed, 54 N.Y.2d 603, 443 N.Y.S.2d 1026, 426 N.E.2d 755 (1981); Caminito v. City of New York, 45 Misc.2d 241, 250-51, 256 N.Y.S.2d 670, 680 (1965) (police officers may be liable in action for malicious prosecution), we lack the authority to disturb its judgment. As a result, res judicata bars Ms. Conway the claim. See Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
 
 The Claims Against Vincent Cerbone
 
 30
 Dismissal of the claims against Vincent Cerbone on the ground that he was entitled to an absolute immunity by virtue of his status as a village justice was erroneous to the extent that they assert conduct in the dual capacity as a private lawyer. Despite his insistence to the contrary, the complaint alleged claims against him not only in his capacity as town justice but also in his capacity as private counsel for Bano Buick.[11] In dismissing all of the claims against Cerbone, the district court either incorrectly applied the doctrine of judicial immunity to conduct attributable to him as an individual or simply overlooked the claims against him in his capacity as an individual. In either case, we must reverse, subject to the proviso set forth below.
 
 The Malicious Prosecution Claim
 
 31
 It remains to determine the substantive vitality of the claim of malicious prosecution against the Martabanos, Bano Buick, Inc., and Vincent Cerbone as an individual.[12] Because there are no federal rules of decision for adjudicating Sec. 1983 actions that are based upon claims of malicious prosecution, we are required by 42 U.S.C. Sec. 1988 to turn to state law--in this case, New York state law--for such rules.[13] In doing so, we find that New York law permits recovery on a claim of malicious prosecution only where plaintiff has established four elements:
 
 
 32
 (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice.
 
 
 33
 Russo v. New York, 672 F.2d 1014, 1018 (2d Cir.1982) (quoting Martin v. City of Albany, 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396 N.Y.S.2d 612, 614 (1977); Broughton v. State, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 94, cert. denied, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975), modified, 721 F.2d 410 (2d Cir.1983)). It clearly appears that the first such element has been satisfied, since the Martabanos and Bano Buick, Inc., commenced and continued the criminal proceeding against Ms. Conway. As noted above, it also appears that a trial would be necessary to resolve factual issues concerning the third element--whether there was probable cause for initiating the criminal proceeding; as well as the fourth element--whether the criminal proceeding was instituted with actual malice. The only question for resolution here concerns the second element--whether as a matter of law the proceeding terminated in Ms. Conway's favor.
 
 
 34
 In Singleton, 632 F.2d at 193, the termination of a criminal proceeding after adjournment in contemplation of dismissal was not held to be tantamount to a complete acquittal for purposes of bringing a civil rights claim. In Russo, 672 F.2d at 1019, which followed Halberstadt v. New York Life Insurance Co., 194 N.Y. 1, 10-11, 86 N.E. 801, 803-04 (1909), a determination made in favor of the accused on the merits was found to be a favorable termination, but where it is not based on the merits, the dispositive inquiry--to be made factually--was found to be whether the failure to proceed implies a lack of reasonable grounds for the prosecution. See also Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (1980) (favorable termination where failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution"), amended, 80 A.D.2d 838, 439 N.Y.S.2d 300 (1981).
 
 
 35
 In this case, we do not know whether the dismissal of Ms. Conway's prosecution was made on the merits. While the copy of the village court docket entries parenthetically indicates that the dismissal was "not on the merits," the entry itself was made before Vincent Cerbone, a justice who had disqualified himself from the case, and who had acted as counsel for the complainants, even advising them to bring it. We assume that a justice has control over his own docket, and therefore, as we have said, such an entry is suspect on its face and surely not controlling.
 
 
 36
 Given the facts in the record before us, it would be a very bold district attorney who would have sought to press the bad check charge. Of course, whether there was a favorable termination for Ms. Conway is for the jury and the district court to determine as a matter of fact and law, Russo, 672 F.2d at 1020. Assuming that a prosecution was properly undertaken in the first instance,[14] the question of favorable termination clearly remains open. Here, in contrast to Singleton, there was no termination under N.Y.Crim.Proc.Law Sec. 170.55. See Russo, 672 F.2d at 1024 (Feinberg, C.J., concurring). We think it easily possible, even on the present record, for the factfinder and the district court to determine that the termination in Ms. Conway's case was "sufficiently favorable to the accused to constitute a favorable termination." Russo, 672 F.2d at 1020; see also Loeb, 77 A.D.2d at 98, 432 N.Y.S.2d at 491-92.
 
 
 37
 In conclusion, we affirm the order of the district court dismissing the claims against the Village of Mount Kisco, Detective McKinsey, and Vincent Cerbone in his capacity as village justice. We reverse the order of the district court dismissing the claims in the nature of malicious prosecution against the Martabanos, Bano Buick, and Vincent Cerbone in his individual capacity. We grant Vincent Cerbone permission to file a brief within thirty days from the date of entry of this judgment, should he desire to take issue with the tentative rulings of this court against him, judgment to be suspended until this court has had the opportunity to review his arguments and any reply thereto made within ten days thereafter by Ms. Conway.[15]
 
 
 38
 Judgment affirmed in part, reversed in part, and cause remanded.
 
 
 
 *
 Of the District of Connecticut, sitting by designation
 
 
 [1]
 N.Y. Penal Law Sec. 190.05(2) provides in part:
 A person is guilty of issuing a bad check when:
 ....
 
 
 [2]
 (a) He passes a check knowing that the drawer thereof does not then have sufficient funds with the drawee to cover it, and (b) he intends or believes at the time the check is passed that payment will be refused by the drawee upon presentation, and (c) payment is refused by the drawee upon presentation
 Issuing a bad check is a class B misdemeanor.
 
 
 [2]
 A state court action was instituted before the federal action by Ms. Conway against the same defendants in tort. Rather extensive discovery in that action took place. The state court examination before trial (EBT) of Alfred Martabano (the father) is included in our record, appended to a post-appeal motion filed by Ms. Conway on September 1, 1983. In it, Mr. Martabano states that Bano Buick replaced the Conways' engine with a junkyard engine obtained from Bedford Auto Wreckers. According to the Conways' EBTs, the engine stopped working on their way home from the garage. While these EBTs were not before the district court at the time of its dismissal orders, excerpts from the EBT of Alfred V. Martabano (the son) were appended to Ms. Conway's opposition affidavit. The district court was thus aware of the state court proceedings. It might have been helpful to the court, as well as to us, if it had referred to these EBTs before ruling
 
 
 [3]
 The Conways' EBTs indicate that the Bano service manager told them they would have to pay to remove the engine and put another one in
 
 
 [4]
 According to Alfred Martabano's EBT, however, he did talk with Ms. Conway by telephone (as she also testified), at which time Ms. Conway told him that her husband would call back. While Mr. Conway did not do so, he did meet Mr. Martabano in person to discuss the engine matter. The two were apparently unable to work things out; and after a few more calls to the Conways seeking payment, Martabano, Sr., called Vincent Cerbone, who told him to have his son deliver the check to Cerbone
 
 
 [5]
 Ms. Conway's brief is, however, consistent with her EBT
 
 
 [6]
 These statements are also supported by the EBTs. The call lends color to the claim that the detective was using official authority to act as a private collection agent
 
 
 [7]
 Section 190.15 (McKinney 1975) reads in part:
 Issuing a bad check; defenses
 In any prosecution for issuing a bad check, it is an affirmative defense that:
 
 
 [1]
 The defendant or a person acting in his behalf made full satisfaction of the amount of the check within ten days after dishonor by the drawee
 
 
 [8]
 The Appellate Division held that Ms. Conway had failed to comply with section 50-e of the General Municipal Law in that her notice of claim against the village was served upon an administrative aide to the director of the Office of Community Development rather than the village mayor, clerk, or a trustee
 
 
 [9]
 Fed.R.App.P. 3(c) reads in part:
 (c) Content of the Notice of Appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.
 
 
 [10]
 Her intention to continue her action against Cerbone is manifest not only on inspection of her brief on appeal but her trial-court post-judgment supplemental affidavit dated September 2, 1983
 
 
 [11]
 Paragraph 9 of the complaint states that "[e]ach and all of the acts of the Mt. Kisco Defendants alleged herein were done by Defendants ... as individuals and as government employees." (Emphasis added.) Paragraph 10 of the complaint alleges that "on or before June 30, 1977, Defendant Vincent Cerbone conspired with Bano Buick, Inc., Alfred Martabano, and Alfred V. Martabano to arrest Plaintiff Lynn Conway without probable cause and did arrest Plaintiff ...." Paragraph 14 alleges that Cerbone "conspired with Bano Buick, Inc., Alfred Martabano, and Alfred V. Martabano, by executing said arrest warrant against Plaintiff Lynn Conway." Paragraph 9 expressly alleges claims against Cerbone as an individual, while paragraphs 10 and 24 allege claims concerning Cerbone's conduct that are coherent only when attributed to Cerbone acting in his individual capacity as attorney for Bano Buick, Inc. In contrast, compare paragraph 16 of Ms. Conway's complaint, which alleges that "Defendant Vincent Cerbone as Village Justice permitted, encouraged, and acquiesced in allowing the malicious and groundless criminal charges to continue against Plaintiff Lynn Conway from June 30, 1977, until September 20, 1979." (Emphasis added.)
 
 
 [12]
 The Martabanos properly do not question their liability to suit as private litigants under Sec. 1983, despite Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (action under Sec. 1983 against a private party alleging that his invocation of a state statutory prejudgment attachment procedure had resulted in plaintiff's loss of property without due process). See also Dahlberg v. Becker, 748 F.2d 85 (2d Cir.1984) (suit only against private party must allege unconstitutionality of state statute or procedure). While Ms. Conway alleges the unconstitutionality of neither N.Y. Penal Law Sec. 190.05(2) nor any state-authorized procedure executed by any of the defendants during her prosecution, she does allege that state officials--Detective McKinsey and Vincent Cerbone in his capacity as village justice--conspired with and acted jointly with the Martabanos to violate her rights under the Fourteenth Amendment, committing overt acts in furtherance of the conspiracy to do so. Thus, the relevant precedent is not Lugar, but rather Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Lugar incidentally implicitly reflects the current vitality of Adickes; while Justice White, writing for the Court, and Justice Powell, in vigorous dissent, voice conflicting views concerning whether in the portion of Adickes relating to refusal of service the Court intended that different standards should govern the satisfaction of the state action and "under color of law" requirements, both the Court, 457 U.S. at 930-32, 102 S.Ct. at 2750-51, and Justice Powell, id. at 954-56, 102 S.Ct. at 2763-64, accept the proposition that private litigants engaged in a conspiracy with state officials to violate the Fourteenth Amendment are amenable to a cause of action under Sec. 1983--whether as state actors by virtue of conspiratorial conduct with state officials, or as private actors who, acting in conspiratorial concert with state actors, thereby act under color of law
 
 
 [13]
 Section 1988 reads in relevant part:
 The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ...
 See Burnett v. Grattan, --- U.S. ----, ----, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (U.S. June 27, 1984); Board of Regents v. Tomanio, 446 U.S. 478, 484-85, 100 S.Ct. 1790, 1795-96, 64 L.Ed.2d 440 (1980).
 
 
 [14]
 The question is open on remand whether the prosecution could properly have been initiated without the district attorney's consent. See N.Y. County Law Sec. 700(1) (McKinney 1972); People v. Van Sickle, 13 N.Y.2d 61, 192 N.E.2d 9, 242 N.Y.S.2d 34 (1963); People v. Vlasto, 78 Misc.2d 419, 355 N.Y.S.2d 983 (1974). But see People on Complaint of Allen v. Citadel Management Co., 78 Misc.2d 626, 355 N.Y.S.2d 976 (1974)
 
 
 [15]
 To reduce expense, the briefs may be submitted in single-spaced typewritten letter form, not to exceed eight pages (Cerbone) and four pages (Conway) respectively